# EXHIBIT 1



**AS YOU SOW**

11461 San Pablo Ave. Suite 400
El Cerrito, CA 94530

www.asyousow.org
BUILDING A SAFE, JUST, AND SUSTAINABLE WORLD SINCE 1992

**VIA FEDEX & EMAIL**

November 26, 2025

Joseph F. Wayland
Executive Vice President,
General Counsel, and Secretary
Chubb Limited
Bärengasse 32
CH-8001 Zurich, Switzerland

Dear Mr. Wayland,

*As You Sow®* is submitting the attached shareholder proposal using shares owned by the As You Sow Foundation Fund ("Proponent"), a shareholder of Chubb Ltd, for a vote at Chubb's 2026 annual shareholder meeting. This proposal requests Chubb's Board issue a third-party report assessing if and how pursuing subrogation claims for climate-related losses would benefit the Company and its insureds.

The As You Sow Foundation Fund meets Rule 14a-8 of the General Rules and Regulations of the Securities Exchange Act of 1934 requirements including the continuous ownership of over $2,000 worth of Company stock, with voting rights, which the As You Sow Foundation Fund has held continuously for over three years and will continue to hold through the date of the Company's annual meeting in 2026.

The As You Sow Foundation Fund supports this proposal and a representative of *As You Sow* will attend the stockholder meeting to move the resolution as required.

We are available to discuss this issue and are optimistic that such a discussion could result in resolution of the Proponent's concerns. Mary Zuccarello, Climate and Energy Sr. Associate at ▮▮▮▮▮▮▮▮▮▮ is the contact person on behalf of *As You Sow* for this proposal. Mary is available for a meeting with the Company regarding this shareholder proposal at the following days/times: December 16, 2025 at 4:30pm Central European Time or December 17, 2025 at 4:30pm Central European Time.

**Please also send all correspondence regarding this proposal to** ▮▮▮▮▮▮▮▮▮▮

Sincerely,

Andrew Behar
CEO, *As You Sow*

Enclosures
- Shareholder Proposal

cc:  Susan Spivak, Senior Vice President, Investor Relations, ▮▮▮▮▮▮▮▮▮▮

**WHEREAS:**  The United States is facing a homeowners insurance crisis. In 2023, national insurance underwriting losses reached a 10-year high of $38 billion due to more frequent and intense weather-related disasters, inflation costs associated with rebuilding, and reinsurance price increases.[1] 2024 followed as the second-costliest year for catastrophe losses since 2005.[2]

The insurance industry has responded with aggressive rate increases and policy non-renewals. Between 2017 and 2023, homeowners' premiums increased nationwide by 34% and another 10.4% in 2024.[3] Approximately 1.9 million insurance contracts have not been renewed since 2018.[4]

While price hikes and non-renewals preserve short-term insurance company profitability, they threaten the sustainability of the homeowners insurance customer base. They also create risk for financial markets. Homeowners insurance enables access to mortgage loans necessary for home purchases; home sales support a range of other businesses while generating property tax revenue for local and state governments. When insurance becomes unaffordable or unavailable, home sales slow, property values decline, and cascading shocks ripple across the housing market and the broader economy.

One important means by which insurance companies can stem this crisis is to offset their catastrophe losses through subrogation, an industry practice where insurers pursue contributions for claim payments made from responsible third parties. Seeking contributions from responsible parties not only helps reduce costs borne by insurance companies but maintains affordable premiums and ensures that responsible parties are held accountable for the damage they cause.

Chubb experienced $2.4 billion in pre-tax catastrophe losses in 2024 compared with $1.8 billion in 2023.[5] Seeking compensation from parties responsible for causing climate change will allow Chubb to successfully maintain its homeowner business line and serve its customers responsibly.

Attribution science has developed sufficiently to assign responsibility for climate change to responsible parties.[6] It can also assess the frequency and intensity of certain types of extreme weather attributable to climate change.[7] Accordingly, recent legislative proposals in California[8] and Hawaii[9] have encouraged insurers to pursue subrogation claims against high-emitting companies for climate-related damages.

---

[1] https://www.insurancejournal.com/news/national/2024/03/07/763884.htm
[2] https://www.insurancebusinessmag.com/us/news/property/pandc-returns-to-underwriting-profit-in-2024-529406.aspx
[3] https://www.spglobal.com/market-intelligence/en/news-insights/articles/2025/1/us-homeowners-rates-rise-by-double-digits-for-2nd-straight-year-in-2024-87061085
[4] https://www.nytimes.com/interactive/2024/12/18/climate/insurance-non-renewal-climate-crisis.html
[5] https://www.businessinsurance.com/chubb-q4-profit-down-amid-higher-catastrophe-losses/; A Senate Budget Committee probe revealed that climate change is driving this increasing non-renewal rate, https://www.budget.senate.gov/imo/media/doc/next_to_fall_the_climate-driven_insurance_crisis_is_here__and_getting_worse.pdf
[6] https://www.nature.com/articles/s41586-025-08751-3
[7] https://www.nature.com/articles/s41467-023-41888-1
[8] https://sd11.senate.ca.gov/news/la-turns-recovery-senator-wiener-introduces-bill-boost-insurance-affordability-allow-victims
[9] https://legiscan.com/HI/bill/SCR198/2025

Chubb has not disclosed whether it is exploring opportunities to recover climate-related damages from responsible parties, even though such actions could reduce claim-related losses, preserve shareholder value, and improve insurance affordability and availability.

Shareholders would benefit from understanding whether management is considering this cost-recovery opportunity, the rationale for its approach, and how such strategies could affect the Company's financial performance under various climate scenarios.

**RESOLVED:**  Shareholders request that Chubb issue a third-party report assessing if and how pursuing subrogation claims for climate-related losses would benefit the Company and its insureds, omitting proprietary information, and at reasonable expense.