**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| AS YOU SOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:26-cv-00734 (SLS) |
| ) | |
| CHUBB LIMITED, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Nicolas A. Sansone (DC Bar No. 1686810)
Nandan Joshi (DC Bar No. 456750)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiff*

March 11, 2026

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

    Statutory and Regulatory Background........................................................................... 2

    Factual Background ....................................................................................................... 6

STANDARD OF REVIEW ............................................................................................ 10

ARGUMENT .................................................................................................................. 10

I.    As You Sow is likely to succeed on the merits.................................................... 10

    A.    As You Sow's proposal concerns a significant policy issue, not "ordinary business operations.".................................................................................................... 12

    B.    The proposal does not seek to micromanage Chubb's operations. ............................. 17

II.    The remaining preliminary injunction factors favor As You Sow. ...................... 19

CONCLUSION................................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Aamer v. Obama*,
    742 F.3d 1023 (D.C. Cir. 2014) ........................................................................... 19

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*,
    821 F. Supp. 877 (S.D.N.Y. 1993) ........................................................................ 3

*Amarasinghe v. Quinn*,
    148 F. Supp. 2d 630 (E.D. Va. 2001) .................................................................. 20

*Billington v. Hayduk*,
    439 F. Supp. 971 (S.D.N.Y. 1977) ...................................................................... 20

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ............................................................................ 10

*Kisor v. Wilkie*,
    588 U.S. 558 (2019) ............................................................................................ 12

*Lovenheim v. Iroquois Brands, Ltd.*,
    618 F. Supp. 554 (D.D.C. 1985) ......................................................................... 20

*Medical Committee for Human Rights v. Securities and Exchange Commission*,
    432 F.2d 659 (D.C. Cir. 1970) ................................................................... 4, 5, 15

*New York City Employees' Retirement System v. American Brands, Inc.*,
    634 F. Supp. 1382 (S.D.N.Y. 1986) .................................................................... 20

*Roosevelt v. E.I. Du Pont de Nemours & Co.*,
    958 F.2d 416 (D.C. Cir. 1992) ......................................................... 4, 6, 14, 17

**Statutes**

15 U.S.C. § 78n(a)(1) ................................................................................................ 4, 10

**Regulations**

17 C.F.R. § 240.14a-8(a) .............................................................................................. 4

17 C.F.R. § 240.14a-8(b) .............................................................................................. 4

17 C.F.R. § 240.14a-8(b)(1)(i)(A) ........................................................................... 5, 11

17 C.F.R. § 240.14a-8(b)(1)(ii) ............................................................................... 5, 11

17 C.F.R. § 240.14a-8(b)(1)(iii) .............................................................................. 5, 11

17 C.F.R. § 240.14a-8(f)(1) ................................................................................. 5, 11

17 C.F.R. § 240.14a-8(g) ............................................................................. 4, 5, 6, 11

17 C.F.R. § 240.14a-8(i) ....................................................................................... 5, 11

17 C.F.R. § 240.14a-8(i)(2) ........................................................................................ 5

17 C.F.R. § 240.14a-8(i)(7) ............................................................................... 2, 5, 16

17 C.F.R. § 240.14a-8(j)(1) ................................................................................... 6, 10

17 C.F.R. § 240.14a-8(k) ........................................................................................... 6

## Other Authorities

Bailey Schulz & Jessica Guynn, *Soaring Insurance Costs Are Making More Homeowners Go Without It*, USA Today (June 23, 2024) ................................................................. 14

Christopher Flavelle, *How the Climate Crisis Became an Insurance Crisis*, New York Times (Dec. 19, 2024) .......................................................................... 14

Christopher Flavelle, *Insurers Are Deserting Homeowners as Climate Shocks Worsen*, New York Times (Dec. 18, 2024) .......................................................................... 14

H.R. Rep. No. 73-1383 (Apr. 27, 1934) ...................................................................... 4

James D. Cox & Randall S. Thomas, *The SEC's Shareholder Proposal Rule: Creating a Corporate Public Square*, 2021 Columbia Business Law Review 1147 (2021) ...................... 4

Jason Woleben, *US Homeowners Rates Rise by Double Digits for 2nd Straight Year in 2024*, S&P Global (Jan. 21, 2025) .................................................................................. 7

Joe Pinsker & Oyin Adedoyin, *What Wildfires Mean for America's Home-Insurance Bills*, Wall Street Journal (Jan. 10, 2025) ....................................................................... 13

Jon Sindreu, *Climate Risk Is Becoming Uninsurable. Better Forecasting Can Help*, Wall Street Journal (Oct. 30, 2023) ....................................................................... 14

Julie Coleman, *Chubb CEO Says Climate Change Has Created "Tremendous Volatility" for Insurance Companies*, CNBC (June 6, 2024) ......................................................... 15

Justin Worland, *Good Luck Getting Insurance When Your Country Is on Fire*, Time (June 7, 2023) ............................................................................................. 14

Katherine Hamilton, *Chubb Expects $1.5 Billion in LA Wildfire Losses as It Shrinks California Coverage*, Market Screener (Jan. 29, 2025) .......................................................... 15

Kenneth Araullo, *P&C Returns to Underwriting Profit in 2024*,
Insurance Business (Mar. 21, 2025) ........................................................................ 7

Patrick J. Ryan, *Rule 14a-8, Institutional Shareholder Proposals, and Corporate Democracy*,
23 Georgia Law Review 97 (1988) ..................................................................... 3, 4

Polly Mosendz & Eric Roston, *The 30-Year Mortgage Wasn't Designed for Climate Chaos*,
Bloomberg (Dec. 23, 2024) ................................................................................. 14

Ron Wyden, *Wyden, Whitehouse Launch Investigation into Climate Change-Fueled
Insurance Crisis* (Nov. 2, 2023) .......................................................................... 14

Securities and Exchange Commission, *No-Action Responses Issued Under Rule 14a-8 for Prior
Seasons* (last updated Nov. 26, 2025) .................................................................. 6

Securities and Exchange Commission, Release No. 34-12999, *Adoption of Amendments
Relating to Proposals by Security Holders*, 1976 WL 160347 (Nov. 22, 1976) ............... 12, 15

Securities and Exchange Commission, Release No. 34-19135, *Proposed Amendments to
Rule 14a-8*, 47 Fed. Reg. 47420 (Oct. 26, 1982) ....................................................... 3

Securities and Exchange Commission, Release No. 34-40018, *Amendments to Rules
on Shareholder Proposals*, 63 Fed. Reg. 29106 (May 28, 1998) .......................... 12, 13, 16, 17

Securities and Exchange Commission, *Shareholder Proposals: Staff Legal Bulletin
No. 14K (CF)* (Oct. 16, 2019) ........................................................................ 18, 19

Securities and Exchange Commission, *Shareholder Proposals: Staff Legal Bulletin
No. 14L (CF)* (Nov. 3, 2021) ............................................................................... 13

Securities and Exchange Commission, *Shareholder Proposals: Staff Legal Bulletin
No. 14M (CF)* (Feb. 12, 2025) ........................................................................ 13, 17

Securities and Exchange Commission, *Statement Regarding the Division of Corporation
Finance's Role in the Exchange Act Rule 14a-8 Process for the Current Proxy Season*
(Nov. 17, 2025) .................................................................................................. 6

Stephan Kahl, *Catastrophic Weather Drives Insured Losses to Highest Since 2017*,
Bloomberg (Jan. 9, 2025) ................................................................................... 14

U.S. Department of the Treasury, Press Release, *U.S. Department of the Treasury Report:
Homeowners Insurance Costs Rising, Availability Declining as Climate-Related Events
Take Their Toll* (Jan. 16, 2025) ....................................................................... 8, 14

## INTRODUCTION

Plaintiff As You Sow, a nonprofit organization that focuses on corporate responsibility, holds shares in Defendant Chubb Limited (Chubb), an insurance company. As You Sow seeks a preliminary injunction from this Court that would enable As You Sow to exercise its right as a shareholder to present a proposal asking Chubb to consider how to respond effectively to the serious and growing challenges that climate change poses to Chubb's customers and business.

Increasingly frequent and destructive weather events, stemming from a warming atmosphere, are rapidly raising the cost of insuring homeowners against catastrophic property loss. Insurers have scrambled to respond, in many cases by passing the increased costs of climate-related weather events on to homeowners through higher premiums, while also withdrawing coverage from vulnerable geographic regions. Journalists, politicians, and insurance executives have all acknowledged that these conditions have created an affordability crisis for homeowners and a long-term profitability concern for insurance companies attempting to squeeze growing premiums from a deteriorating client base.

To address this significant policy issue, As You Sow has filed, and intends to present at Chubb's annual shareholder meeting this May, a shareholder proposal asking Chubb to commission a report on whether Chubb and its insureds would benefit from Chubb pursuing claims for compensation from third-party polluters that are driving climate change and the consequent insurability crisis. To inform shareholders of this proposal and put it to a vote, As You Sow has asked Chubb, pursuant to Securities and Exchange Commission (SEC) Rule 14a-8, to include the proposal in the materials that Chubb will disseminate to its shareholders, likely in early April, when it solicits proxy votes from shareholders who do not plan to vote in person at the meeting.

Although Rule 14a-8 requires companies to include properly submitted proposals from shareholders in their proxy materials, Chubb has refused to include As You Sow's proposal. Chubb has invoked a regulatory exception that permits a company to exclude proposals that "deal[] with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7).

As You Sow is likely to prevail on the merits of its claim that Chubb has failed to carry its burden of establishing that the proposal falls within this exception. The D.C. Circuit and the SEC have long recognized that significant public policy issues that transcend a company's day-to-day management decisions do not fall within the exception for "ordinary business operations," even (indeed, especially) when those issues have important implications for the company's business. As You Sow's proposal addresses just such a significant policy issue: the profound significance of climate change to the insurance industry, homeowners, and the viability of Chubb's future business strategy.

As You Sow will also suffer irreparable harm absent a preliminary injunction. Chubb has announced that it will hold its 2026 shareholder meeting in May, and thus it will likely disseminate its proxy materials in early April. Once those materials have been finalized, As You Sow will irretrievably lose the opportunity to ensure that shareholders can consider and vote on its proposal. Chubb, in contrast, will suffer no harm from presenting As You Sow's proposal to its shareholders. Finally, the public interest favors an injunction that enables Chubb's shareholders to make their voices heard on a matter of significance to the ongoing vitality of the company's business model.

## STATEMENT OF FACTS

### Statutory and Regulatory Background

When a shareholder acquires voting stock in a publicly traded corporation, the shareholder gains a right to provide input on matters of significance to the company. *See* Patrick J. Ryan, *Rule*

*14a-8, Institutional Shareholder Proposals, and Corporate Democracy*, 23 Ga. L. Rev. 97, 104 (1988) (hereafter, Ryan, *Rule 14a-8*). Although shareholder voting traditionally took place at the company's annual shareholder meeting, now "most public corporations have shareholders numbering in the thousands, [if] not tens or hundreds of thousands," and "[a] corporate 'town meeting' of ten thousand shareholders would be exceedingly hard to arrange." *Id.* at 105. At the same time, because "[s]hareholder voting is necessary for lawful corporate action," company management has a strong incentive to ensure that enough votes are cast to reach a quorum. *Id.*

The solution that has emerged to this practical conundrum is the use of proxy voting. *Id.*; *see Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877, 881 (S.D.N.Y. 1993) (explaining that "[p]roxies have become an indispensable part of corporate governance"). Under this system, a company sends its shareholders information about the issues that will be put to a vote at the annual meeting and asks the shareholders to authorize a proxy to vote on their behalf. *See* Ryan, *Rule 14a-8*, at 105. As the SEC has explained, "with the increased dispersion of security holdings in public companies, the proxy solicitation process rather than the shareholder's meeting … ha[s] become the forum for shareholder suffrage." SEC, Release No. 34-19135, *Proposed Amendments to Rule 14a-8*, 47 Fed. Reg. 47420, 47420–21 (Oct. 26, 1982).

At the start of the twentieth century, abuse of the proxy mechanism was rampant. Corporate management would ask shareholders to authorize a proxy without giving them accurate information about the matters that would be put to a vote and, therefore, without giving the shareholders an adequate opportunity to instruct their proxies. *See* Ryan, *Rule 14a-8*, at 136–37; *see also id.* at 105–06. When Congress enacted the Securities Exchange Act of 1934, therefore, a central legislative aim was to "control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which have frustrated the free exercise of the voting

3

rights of stockholders." H.R. Rep. No. 73-1383, at 14 (Apr. 27, 1934). Section 14 of the Act accordingly authorizes the SEC to make rules governing the solicitation of proxies and makes it "unlawful for any person[] … to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any [SEC-registered] security" in contravention of those rules. 15 U.S.C. § 78n(a)(1).

In 1942, the SEC promulgated what is now Rule 14a-8 "to protect the shareholder voice in control of the corporation." Ryan, *Rule 14a-8*, at 140; *see Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 422 (D.C. Cir. 1992) (describing it as "obvious to the point of banality" that the SEC's regulatory power over proxy solicitation is intended "to give true vitality to the concept of corporate democracy" (quoting *Med. Committee for Human Rights v. SEC*, 432 F.2d 659, 676 (D.C. Cir. 1970), *vacated on mootness grounds*, 404 U.S. 403 (1972))). Under the Rule, when a shareholder who holds a sufficient stake in a company's securities wishes to put a proposal to a vote of shareholders at the annual meeting, the company must include the proposal in the materials that it circulates to solicit proxy votes, unless the company establishes that one of the Rule's enumerated exceptions applies. *See* 17 C.F.R. §§ 240.14a-8(a)–(b), (g).

Requiring companies to disseminate shareholder proposals allows shareholders who cannot attend the annual shareholder meeting "reasonably broad expression" of their concerns "within the corporate framework." Ryan, *Rule 14a-8*, at 111. Shareholder proposals also offer corporate directors "valuable information" about "issues that require them to balance the effect of their actions on their firm's stock price and on other interests of their company," James D. Cox & Randall S. Thomas, *The SEC's Shareholder Proposal Rule: Creating a Corporate Public Square*, 2021 Columbia Bus. L. Rev. 1147, 1154 (2021). And, as the D.C. Circuit has recognized, disseminating shareholder proposals advances Congress's "overriding purpose" in enacting

Section 14 "to assure to corporate shareholders the ability to exercise their right—some would say their duty—to control the important decisions which affect them in their capacity as stockholders and owners of the corporation." *Med. Committee*, 432 F.2d at 680–81 (footnote omitted).

Under Rule 14a-8, an eligible shareholder—including, as relevant here, one that has continuously held "[a]t least $2,000 in market value of the company's securities entitled to vote … for at least three years"—must first submit the proposal to the company. 17 C.F.R. § 240.14a-8(b)(1)(i)(A). The proposal must be accompanied by a statement that the shareholder "intend[s] to continue to hold the requisite amount of securities" to satisfy the Rule's eligibility requirements "through the date of the shareholders' meeting for which the proposal is submitted." *Id.* § 240.14a-8(b)(1)(ii). And the shareholder must also provide contact information and identify possible times between ten and thirty days after the date of the submission of the proposal when the shareholder is available to discuss the proposal with the company. *Id.* § 240.14a-8(b)(1)(iii).

The company must then either include the proposal in its proxy materials or establish that the proposal may properly be excluded. *Id.* § 240.14a-8(g). If the company wishes to exclude the proposal for failing to satisfy the Rule's eligibility or procedural requirements, it must notify the shareholder and give the shareholder an opportunity to correct the problem. *Id.* § 240.14a-8(f)(1). The Rule also contains enumerated substantive bases for excluding properly submitted proposals. *Id.* § 240.14a-8(i). For example, a company may exclude a proposal on the basis that it would, if implemented, require the company to violate the law, *id.* § 240.14a-8(i)(2), or that it "deals with a matter relating to the company's ordinary business operations," *id.* § 240.14a-8(i)(7). If the company asserts that one of these enumerated exceptions applies, it must notify the shareholder and file a statement of its reasons with the SEC no fewer than eighty days before the company

finalizes its proxy materials. *Id.* § 240.14a-8(j)(1). The company has the burden of persuading the SEC or its staff that it is entitled to exclude a proposal. *Id.* § 240.14a-8(g).

Rule 14a-8(k) provides shareholders with an opportunity to respond to the company's statement of reasons. *See id.* § 240.14a-8(k). Historically, the SEC has considered these responses and issued an opinion on whether the proposal is properly excluded. *See* SEC, *No-Action Responses Issued Under Rule 14a-8 for Prior Seasons* (last updated Nov. 26, 2025) (archiving SEC opinions from 2007 to 2025).[1]

On November 17, 2025, however, the SEC announced that it will no longer issue opinions, except where the company claims that a proposal is improper under state law. *See* SEC, *Statement Regarding the Division of Corporation Finance's Role in the Exchange Act Rule 14a-8 Process for the Current Proxy Season* (Nov. 17, 2025).[2] Since shareholders and companies are no longer able to rely on a merits-based judgment from the SEC, shareholders who wish to challenge the exclusion of their proposals now must resort to litigation, invoking their legally recognized private right of action to "seek appropriate declaratory and injunctive relief" in federal district court "when management refuses to distribute their proposals." *Roosevelt*, 958 F.2d at 425.

**Factual Background**

As You Sow is a nonprofit organization that represents shareholders in engagements with companies on a range of issues, with the goal of reducing corporate risk, benefiting brand reputation, and increasing company value. Fugere Decl. ¶ 2. As You Sow also files shareholder proposals pursuant to Rule 14a-8 on behalf of itself and other shareholders, when necessary, to

---

[1] https://www.sec.gov/rules-regulations/shareholder-proposals/no-action-responses-issued-under-rule-14a-8-prior-seasons.

[2] https://www.sec.gov/newsroom/speeches-statements/statement-regarding-division-corporation-finances-role-exchange-act-rule-14a-8-process-current-proxy-season.

draw the attention of management, corporate boards, and shareholders to issues that present material risks to corporate performance and long-term shareholder value. *Id.* Since December 7, 2020, As You Sow has continuously held shares of Chubb, and those shares have continuously maintained a market value greater than $2,000. *Id.* ¶ 3. As You Sow intends to continue holding its shares at least through the date of Chubb's 2026 annual shareholder meeting. *Id.*

Among the public policy issues of grave concern to As You Sow are the worsening effects of climate change and their impact on insurers, homeowners, and the broader market. *Id.* ¶¶ 11–12. As relevant here, As You Sow, as a shareholder, is concerned about the rising frequency and intensity of climate-related disasters that make it increasingly costly to insure homeowners against property damage. *Id.* ¶ 11. In 2023, "[s]evere weather events, including hurricanes and wildfires," contributed to "the worst underwriting loss in a decade" for property and casualty insurers. Kenneth Araullo, *P&C Returns to Underwriting Profit in 2024*, Insurance Business (Mar. 21, 2025).[3] The next year, 2024, was "the second costliest year for catastrophe losses since 1950." *Id.*

To account for growing climate-related risk, insurers have been increasing premiums, *see id.*, with a nationwide cumulative increase in homeowner-insurance premium rates of 44.9% between 2019 and 2024. Jason Woleben, *US Homeowners Rates Rise by Double Digits for 2nd Straight Year in 2024*, S&P Global (Jan. 21, 2025).[4] Meanwhile, insurers have been reducing coverage to homeowners in the areas at highest risk of climate-related losses, with homeowners in the highest-risk zip codes facing nonrenewal rates about 80% higher than those in the lowest-risk zip codes between 2018 and 2022. U.S. Dep't of Treasury, Press Release, *U.S. Department of the*

---

[3] https://www.insurancebusinessmag.com/us/news/property/pandc-returns-to-underwriting-profit-in-2024-529406.aspx.

[4] https://www.spglobal.com/market-intelligence/en/news-insights/articles/2025/1/us-homeowners-rates-rise-by-double-digits-for-2nd-straight-year-in-2024-87061085.

*Treasury Report: Homeowners Insurance Costs Rising, Availability Declining as Climate-Related Events Take Their Toll* (Jan. 16, 2025) (hereafter, *Treasury Report*).[5]

As a shareholder in Chubb, As You Sow fears that continuing to raise homeowners' insurance premiums to unsustainable levels while cutting insurance coverage in vulnerable geographic regions may be inconsistent with the continued profitability of Chubb's business model over the longer term. Fugere Decl. ¶ 12. As You Sow accordingly seeks information from Chubb demonstrating that it is responding to the financial pressures created by climate change in a way that preserves the company's long-term profitability and reputation. *Id.* ¶¶ 11–12.

In a November 26, 2025, letter, As You Sow notified Chubb that it would raise this pressing issue to the attention of Chubb's corporate management, directors, and shareholders by presenting a proposal at Chubb's 2026 annual meeting. *Id.* ¶ 4 & Exh. 1. The proposal asks Chubb to issue a report assessing "if and how" it could defray the increasing cost of providing insurance to at-risk homeowners through "subrogation," *i.e.*, by standing in the shoes of its insureds and seeking financial contributions from responsible third-party polluters whose actions have contributed to climate change and its attendant negative effects on homeowners. Fugere Decl. Exh. 1 at 3.

As You Sow also informed Chubb in writing that As You Sow satisfied all Rule 14a-8 eligibility requirements for the proposal to be included in the proxy materials that Chubb sends to shareholders to solicit votes in advance of the meeting. *Id.* at 1. Specifically, the November 26 letter stated that As You Sow has maintained "continuous ownership of over $2,000 worth of Company stock, with voting rights[] … for over three years" and will "continue to hold" that stock "through the date of the Company's annual meeting in 2026." *Id.* The letter further indicated that

---

[5] https://home.treasury.gov/news/press-releases/jy2791.

As You Sow was "available to discuss" the proposal, and it provided a representative's contact information, with proposed meeting times on December 16 and 17, 2025, for that purpose. *Id.*

On January 13, 2026, Chubb sent a letter to the SEC's Division of Corporation Finance and to As You Sow to notify them that Chubb intended to exclude As You Sow's proposal from its 2026 proxy materials. Fugere Decl. Exh. 2 at 1 (Chubb Resp.). The basis that Chubb offered for the exclusion was that, in Chubb's view, "the Proposal may be properly omitted from the Proxy Materials pursuant to Rule 14a-8(i)(7) because the subject matter of the Proposal relates to the Company's ordinary business operations and the Proposal impermissibly seeks to micromanage the Company." *Id.* at 2. Neither in its January 13 letter nor at any other point has Chubb asserted any other basis for excluding As You Sow's proposal. *See* Fugere Decl. ¶ 6.

As You Sow emailed SEC staff and Chubb on January 15, 2026, to inform them that As You Sow intended to respond to Chubb's letter by January 30. Fugere Decl. Exh. 3. In that email, As You Sow requested that the SEC delay issuing a response to Chubb's letter until after it had received As You Sow's explanation as to why Rule 14a-8(i)(7) is not an appropriate basis for withholding As You Sow's proposal from Chubb's proxy materials. *Id.* A request by a shareholder for a period of this length in which to respond to a company's decision to exclude the shareholder's proposal from the company's proxy materials is typical, and prior to the SEC's newly announced practice of declining to offer a merit-based opinion on a company's decision to exclude a shareholder proposal, SEC staff granted such requests as a matter of course. Fugere Decl. ¶ 8.

The SEC, though, did not give As You Sow time to respond to Chubb's letter. *See id.* ¶ 9. Instead, it issued a letter on January 15 stating that, "[b]ased solely on [Chubb's] representation" that it had "a reasonable basis to exclude [As You Sow's] Proposal," the SEC would "not object if [Chubb] excludes the Proposal from its proxy materials." Fugere Decl. Exh. 4.

Under Rule 14a-8(j)(1), Chubb could finalize its proxy materials for the 2026 meeting as early as April 3, 2026—eighty days after it notified the SEC on January 13 of its intent to exclude As You Sow's proposal. *See* 17 C.F.R. § 240.14a-8(j)(1). Last year, in 2025, Chubb disseminated its proxy materials on or around April 3 and held its annual meeting on May 15. Fugere Decl. ¶ 10. In recent SEC filings, Chubb has indicated that its 2026 meeting will, like last year's, be held in May. *See* Chubb Limited, Form 10-K at 89 (Feb. 27, 2026) (hereafter, Chubb, Form 10-K).[6] As You Sow accordingly expects that Chubb plans to disseminate its final 2026 proxy materials to shareholders at the beginning of April. *See* Fugere Decl. ¶ 10.

## STANDARD OF REVIEW

To secure a preliminary injunction, "the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

## ARGUMENT

**I.    As You Sow is likely to succeed on the merits.**

Section 14 of the Securities Exchange Act of 1934 makes it "unlawful for any person[] … to solicit … any proxy or consent or authorization in respect of any [SEC-registered] security" in a manner that contravenes SEC rules and regulations. 15 U.S.C. § 78n(a)(1). One such rule is SEC Rule 14a-8, which requires a company to include a properly submitted shareholder proposal from

---

[6] https://d18rn0p25nwr6d.cloudfront.net/CIK-0000896159/3b3e19f6-b9f8-436d-b0c0-4825fcc72b46.pdf.

an eligible shareholder in its proxy materials unless the company establishes that an enumerated exception applies. *See* 17 C.F.R. §§ 240.14a-8(g), (i).

Because Chubb registers its securities with the SEC, *see, e.g.*, Chubb Limited, Form S-8 Registration Statement (May 22, 2024),[7] Section 14 requires it to comply with Rule 14a-8 when soliciting proxies. Meanwhile, As You Sow is eligible to submit shareholder proposals under Rule 14a-8 because it has continuously held voting shares in Chubb worth at least $2,000 for at least three years. *See* 17 C.F.R. § 240.14a-8(b)(1)(i)(A); Fugere Decl. ¶ 3.

As You Sow's shareholder proposal also satisfies all applicable procedural requirements. *Compare* 17 C.F.R. §§ 240.14a-8(b)(1)(ii)–(iii) (requiring a written statement that informs the company of the shareholder's intent to continue holding the requisite amount of stock and that provides contact information and proposed meeting times), *with* Fugere Decl. Exh. 1 at 1 (As You Sow's statement containing the required information). Accordingly, in informing the SEC that it would exclude the proposal, Chubb did not dispute that As You Sow is eligible to submit shareholder proposals or that its proposal was procedurally proper. *See* 17 C.F.R. § 240.14a-8(f)(1) (requiring a company to notify the shareholder and give the shareholder an opportunity to cure any "procedural or eligibility deficiencies" that the company invokes as a basis for excluding a proposal); Fugere Decl. ¶ 6 (explaining that Chubb has at no point claimed any such deficiencies).

The narrow question presented, then, is whether Chubb can carry its burden of establishing that one of Rule 14a-8's enumerated substantive exceptions applies. *See* 17 C.F.R. § 240.14a-8(g) (stating that "the burden is on the company to demonstrate that it is entitled to exclude a proposal"). In its letter to the SEC, Chubb invoked only one such exception: Rule 14a-8(i)(7)'s exception for proposals "deal[ing] with a matter relating to the company's ordinary business operations." Fugere

---

[7] https://www.sec.gov/Archives/edgar/data/896159/000110465924064262/tm2414832d1_s8.htm.

11

Decl. Exh. 2 at 2 (Chubb Resp.). Chubb advanced two arguments as to why that exception applies: First, it argued that As You Sow's proposal addresses "ordinary business operations" divorced from significant policy issues. *Id.* at 3–6. Second, it argued that the proposal impermissibly seeks to micromanage the company. *Id.* at 6–8. Neither argument has merit.

### A. As You Sow's proposal concerns a significant policy issue, not "ordinary business operations."

In a 1976 release adopted through notice and comment rulemaking, the SEC explained that the Rule 14a-8(i)(7) exception for proposals that concern "ordinary business operations" does not encompass "matters which have significant policy, economic or other implications inherent in them." SEC, Release No. 34-12999, *Adoption of Amendments Relating to Proposals by Security Holders*, 1976 WL 160347, at *11 (Nov. 22, 1976); *see Kisor v. Wilkie*, 588 U.S. 558, 580 (2019) (explaining that an agency has "significant leeway to say what its own rules mean" where, among other things, a rule is ambiguous and the agency's interpretation is reasonable, considered, and authoritative). After all, as the release stated, proposals that implicate such matters are "beyond the realm of an issuer's ordinary business operations." SEC, Release No. 34-12999, 1976 WL 160347, at *11. The Rule 14a-8(i)(7) exception for "proposals that deal with truly 'ordinary' business matters" instead covers only those proposals that "involve business matters that are mundane in nature and do not involve any substantial policy or other considerations." *Id.* at *12.

The SEC has consistently adhered to this interpretation, which honors "the depth of interest among shareholders in having an opportunity to express their views to company management on … proposals that raise sufficiently significant social policy issues." SEC, Release No. 34-40018, *Amendments to Rules on Shareholder Proposals*, 63 Fed. Reg. 29106, 29108 (May 28, 1998). In 1998, the SEC explained that even proposals that touch on matters that are "fundamental to management's ability to run a company on a day-to-day basis" are not excludable under Rule 14a-

8(i)(7) if they "focus[] on sufficiently significant social policy issues … because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote." *Id.* In 2021, SEC staff reaffirmed that including proposals that implicate "issues with a broad societal impact" in a company's proxy materials "is essential for preserving shareholders' right to bring important issues before other shareholders" for a vote. SEC, *Shareholder Proposals: Staff Legal Bulletin No. 14L (CF)* (Nov. 3, 2021).[8] And as recently as February 12, 2025, SEC staff reiterated that a proposal that "focuses on a significant policy issue that has a sufficient nexus to a particular company" is not excludable under Rule 14a-8(i)(7). SEC, *Shareholder Proposals: Staff Legal Bulletin No. 14M (CF)* (Feb. 12, 2025) (hereafter, SEC, *Legal Bulletin No. 14M*).[9]

As You Sow's proposal implicates exactly the sort of significant policy issue that brings the proposal outside the realm of ordinary business operations. The issue of climate change and its impact on the insurance industry has become front-page news, as well as the subject of extensive public discussion, due to the pressure that climate-related extreme weather events are putting on the cost of insurance for homeowners and the viability of national insurers as more and more homeowners are unable to afford increasingly costly premiums and the range of insurable properties declines. *See, e.g.*, Joe Pinsker & Oyin Adedoyin, *What Wildfires Mean for America's Home-Insurance Bills*, Wall St. J. (Jan. 10, 2025);[10] Stephan Kahl, *Catastrophic Weather Drives*

---

[8] https://www.sec.gov/rules-regulations/staff-guidance/staff-legal-bulletins/shareholder-proposals-staff-legal-bulletin-no-14l-cf.

[9] https://www.sec.gov/about/shareholder-proposals-staff-legal-bulletin-no-14m-cf.

[10] https://www.wsj.com/personal-finance/wildfires-and-other-disasters-push-up-home-insurance-rates-thousands-of-miles-away-f0a20085.

*Insured Losses to Highest Since 2017*, Bloomberg (Jan. 9, 2025);[11] Polly Mosendz & Eric Roston,

*The 30-Year Mortgage Wasn't Designed for Climate Chaos*, Bloomberg (Dec. 23, 2024);[12]

Christopher Flavelle, *How the Climate Crisis Became an Insurance Crisis*, N.Y. Times (Dec. 19,

2024);[13] Christopher Flavelle, *Insurers Are Deserting Homeowners as Climate Shocks Worsen*,

N.Y. Times (Dec. 18, 2024);[14] Bailey Schulz & Jessica Guynn, *Soaring Insurance Costs Are*

*Making More Homeowners Go Without It*, USA Today (June 23, 2024);[15] Jon Sindreu, *Climate*

*Risk Is Becoming Uninsurable. Better Forecasting Can Help*, Wall St. J. (Oct. 30, 2023);[16] Justin

Worland, *Good Luck Getting Insurance When Your Country Is on Fire*, Time (June 7, 2023).[17]

National policymakers, too, have identified the reduced coverage and skyrocketing

insurance premiums stemming from climate change as a "crisis" that warrants governmental

investigation. *See, e.g.*, Ron Wyden, *Wyden, Whitehouse Launch Investigation into Climate*

*Change-Fueled Insurance Crisis* (Nov. 2, 2023);[18] *Treasury Report*, *supra* note 5; *cf. Roosevelt*,

958 F.2d at 428 ("'[O]rdinary business operations' ordinarily do not attract the interest of both the

executive and legislative branches of the federal government."). Indeed, Chubb itself has publicly

---

[11] https://www.bloomberg.com/news/articles/2025-01-09/extreme-weather-drives-insured-losses-to-highest-since-2017.

[12] https://www.bloomberg.com/features/2024-home-loan-mortgage-insurance-climate-risks.

[13] https://www.nytimes.com/2024/12/19/climate/how-the-climate-crisis-became-an-insurance-crisis.html.

[14] https://www.nytimes.com/interactive/2024/12/18/climate/insurance-non-renewal-climate-crisis.html.

[15] https://www.usatoday.com/story/money/2024/06/23/americans-not-buying-homeowners-insurance/74144566007.

[16] https://www.wsj.com/business/entrepreneurship/climate-risk-is-becoming-uninsurable-better-forecasting-can-help-b9c94ca6.

[17] https://time.com/6285661/california-insurance-climate-wildfires.

[18] https://www.wyden.senate.gov/news/press-releases/wyden-whitehouse-launch-investigation-into-climate-change-fueled-insurance-crisis.

acknowledged that climate change may have profound implications for its coverage decisions and overall financial condition. *See, e.g.*, Chubb, Form 10-K, *supra* note 6, at 19 ("[C]limate change and resulting changes in global temperatures, weather patterns, and sea levels may both increase the frequency and severity of natural catastrophes and the resulting losses in the future and impact our risk modeling assumptions."); Katherine Hamilton, *Chubb Expects $1.5 Billion in LA Wildfire Losses as It Shrinks California Coverage*, Market Screener (Jan. 29, 2025);[19] Julie Coleman, *Chubb CEO Says Climate Change Has Created "Tremendous Volatility" for Insurance Companies*, CNBC (June 6, 2024).[20]

In the face of growing climate-linked turbulence in the insurance market, Chubb shareholders are entitled to propose that Chubb consider options for how to respond to this significant policy issue. *See Med. Committee*, 432 F.2d at 681 (rejecting "the conclusion that management may properly place obstacles in the path of shareholders who wish to present to their co-owners[] … the question of whether they wish to have their assets used in a manner which they believe to be more socially responsible … than that which is dictated by present company policy"). Especially given the significance of insurance affordability for Chubb's business, it is particularly appropriate for its shareholders to have a voice. *See* SEC, Release No. 34-12999, 1976 WL 160347, at *11 (explaining that the "magnitude" of the "economic … considerations attendant" to a shareholder proposal may bring the proposal outside of the Rule 14a-8(i)(7) exception).

Because As You Sow's proposal targets a significant policy issue, the proposal is not excludable as relating to ordinary business operations. Even Chubb acknowledges that a

---

[19] https://www.marketscreener.com/quote/stock/CHUBB-LIMITED-3860961/news/Chubb-Expects-1-5-Billion-in-LA-Wildfire-Losses-as-It-Shrinks-California-Coverage-48904518.

[20] https://www.cnbc.com/2024/06/06/chubb-ceo-climate-change-created-volatility-for-insurance-companies.html.

shareholder proposal "generally will not be excludable under Rule 14a-8(i)(7) where it raises a significant policy issue." Fugere Decl. Exh. 2 at 5 (Chubb Resp.). Moreover, Chubb does not dispute the significance of climate change's growing contribution to property losses, increasing premiums for homeowners and related regulatory obligations, or the potential for loss of business for insurers. *See id.* at 5–6. While Chubb, in its letter to the SEC, characterized As You Sow's proposal as only "nominally relate[d] to climate change," *id.* at 6, climate change is at the core of the proposal, by its plain terms. Indeed, the proposal is focused exclusively on generating information about how Chubb could respond to "climate-related losses" and impose the cost of climate-related property damage on parties responsible for climate change rather than on homeowners. Fugere Decl. Exh. 1 at 3.

Given the admitted significance of the policy issue addressed by the proposal—the substantial and growing costs associated with climate change and their impact on insurers, homeowners, and the broader financial system—Chubb's complaint that adopting the proposal could "influence … day-to-day operational decisions and core business matters," Fugere Decl. Exh. 2 at 6 (Chubb Resp.), holds no relevance. *See* SEC, Release No. 34-40018, 63 Fed. Reg. at 29108 (explaining that proposals that "focus[] on sufficiently significant social policy issues" are not excludable, even where they touch on matters that are "fundamental to management's ability to run a company on a day-to-day basis").

After all, if the exception for "matter[s] relating to [a] company's ordinary business operations," 17 C.F.R. § 240.14a-8(i)(7), encompassed all proposals that might *affect* a company's everyday operations or its "products and services," Fugere Decl. Exh. 2 at 3 (Chubb Resp.), virtually no proposal could go forward. Such a capacious reading of the exception would also render nonsensical the SEC's recognition that shareholder proposals may address significant

16

policy issues. Only those proposals regarding significant policy issues that hold no relevance to the company could be brought, because only those proposals would pose no possibility of influencing a company's conduct in its operations. But the SEC has stated that a shareholder proposal addressing a significant policy issue not only *may* bear a "sufficient nexus to [the] company" but *must* do so. SEC, *Legal Bulletin No. 14M*, *supra* note 9. And this requirement is sensible. The point of a shareholder proposal is to raise significant issues that could affect a company's future to fellow shareholders' attention and enable them to exercise their voting rights as to the issues raised. Indeed, it is those matters that bear on a company's "fundamental business strategy" or "long-term goals" that the SEC has recognized as particularly appropriate subjects for shareholder proposals. *Roosevelt*, 958 F.2d at 427 (quoting SEC brief); *see also id.* at 427 n.19 (endorsing the brief as "valu[able] and "clarif[ying]," albeit not subject to deference).

**B.  The proposal does not seek to micromanage Chubb's operations.**

Chubb also argues that As You Sow's proposal is properly excluded under Rule 14a-8(i)(7) because it allegedly seeks to micromanage company operations. Fugere Decl. Exh. 2 at 6–8 (Chubb Resp.). This argument is also baseless.

As the SEC has explained, a proposal is properly excluded if it "seeks to micro-manage the company" by, for example, "seek[ing] intricate detail, or seek[ing] to impose specific time-frames or to impose specific methods for implementing complex policies." SEC, Release No. 34-40018, 63 Fed. Reg. at 29109. A proposal that "request[s] that [a] company consider, discuss the feasibility of, or evaluate the potential for a particular issue," in contrast, "generally would not be viewed as

micromanaging matters of a complex nature." SEC, *Shareholder Proposals: Staff Legal Bulletin No. 14K (CF)* (Oct. 16, 2019) (hereafter, SEC, *Legal Bulletin No. 14K*).[21]

As You Sow's proposal falls squarely in the latter category. It asks Chubb to consider, by way of a third-party report, if and how subrogation claims may be an advantageous response to the financial pressures insurers face due to climate change. The proposal does not direct how—or even whether—Chubb should pursue subrogation claims, and it does not dictate, or even touch on, how Chubb goes about making pricing, coverage, or other business decisions.

Chubb's contention that the proposal "improperly interferes with the discretion of [Chubb's] Board and management to make informed judgments" about subrogation, Fugere Decl. Exh. 2 at 7 (Chubb Resp.), mischaracterizes the proposal. Although Chubb emphasizes that "[w]hether to assert a subrogation claim" in any particular case "is very fact specific and depends on what are often complex legal and business judgments," *id.* at 3, the proposal does not require that Chubb pursue subrogation under any given circumstances, and it does not seek to direct case-specific judgments about whether subrogation is appropriate. Rather, the proposal seeks information about "if and how" subrogation might play a role in Chubb's overall response to what Chubb itself acknowledges is a growing source of volatility for its business. Fugere Decl. Exh. 1 at 3. While insights gleaned from the report could influence Chubb's strategic direction, decisions about whether and how to incorporate those insights would remain in Chubb's hands

Chubb also argues that the proposal seeks to micromanage the company because it "would override the Board's and management's discretion to determine" whether to commission a report.

---

[21] https://www.sec.gov/rules-regulations/staff-guidance/staff-legal-bulletins/staff-legal-bulletin-14k-shareholder-proposals.

Fugere Decl. Exh. 2 at 7 (Chubb Resp.). Chubb could make the same argument for any proposal, however, since every proposal requests some form of reporting or action.

In any event, the SEC has routinely approved proposals that request reports. For example, in a 2019 guidance bulletin, SEC staff described a proposal seeking a report on whether or how a company planned to reduce its contribution to climate change. SEC, *Legal Bulletin No. 14K*, *supra* note 21. The bulletin explained that the proposal "did not seek to micromanage the company because [the proposal] deferred to management's discretion to consider if and how the company plan[ned] to reduce its carbon footprint." *Id.* As You Sow's proposal, just like the one described in the bulletin, preserves ample discretion for the company's management.

***

Ultimately, Chubb cannot carry its burden of showing that As You Sow's proposal seeks to impermissibly interfere with Chubb's day-to-day business operations or to micromanage its decisions. Instead, the proposal seeks to ensure that Chubb adopts an informed approach to a significant policy issue that bears substantially on Chubb's long-term viability and profitability in the face of increasingly severe climate catastrophes. As You Sow is thus likely to prevail on its claim that the exclusion of the proposal from Chubb's 2026 proxy materials is unlawful.

## II.    The remaining preliminary injunction factors favor As You Sow.

While likelihood of success on the merits is the "most important" factor in granting a preliminary injunction, *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014), the other factors are also satisfied here: As You Sow will suffer irreparable harm absent an injunction; an injunction will cause no irreparable harm to Chubb; and the public interest favors an injunction.

As for irreparable harm to As You Sow, Chubb has announced that it will hold its 2026 shareholder meeting in May and, therefore, will disseminate its proxy materials before then—

19

potentially as soon as April 3. *See supra* p. 10. If Chubb is not ordered to include As You Sow's proposal in its proxy materials before the proxy is distributed, As You Sow will irretrievably lose the opportunity to put its proposal before its fellow shareholders for a vote. As other courts have recognized, "irreparable harm occurs to a shareholder whose proposal is wrongfully excluded from management's proxy solicitation because the shareholder loses the 'opportunity to communicate his concern with those shareholders not attending the upcoming shareholder meeting'" or that have voted prior to the meeting. *N.Y.C. Emps. Retirement Sys. v. Am. Brands, Inc.*, 634 F. Supp. 1382, 1388 (S.D.N.Y. 1986) (quoting *Lovenheim v. Iroquois Brands, Ltd.*, 618 F. Supp. 554, 561 (D.D.C. 1985)); *cf. Amarasinghe v. Quinn*, 148 F. Supp. 2d 630, 634 (E.D. Va. 2001) (finding that "there cannot be serious dispute" that a candidate for office is "irreparably injured" if he cannot "be considered on the ballot by the voters"); *Billington v. Hayduk*, 439 F. Supp. 971, 974 (S.D.N.Y. 1977) (similar).

As against the certain, irreparable harm that As You Sow will suffer absent an injunction, Chubb will suffer no irreparable harm if it is enjoined to include As You Sow's proposal in its proxy materials. To the contrary, by informing its shareholders of the proposal and enabling them to vote on the proposal by proxy, Chubb will gain valuable insight into its shareholders' views on a significant policy issue. The proposal, moreover, allows Chubb complete discretion in determining how to commission the subrogation report and what, if anything, to do with its findings and recommendations. If the proposal passes, the benefits of the report—which will inform Chubb "if and how" subrogation claims can improve Chubb's profitability, Fugere Decl. Exh. 1 at 3—may well outweigh the report's cost. Even if Chubb undertakes the study and decides not to take action, moreover, Chubb loses only the reasonable cost of commissioning the report, while gaining knowledge about a significant policy issue that bears heavily on its business model.

Finally, the public interest favors an injunction. As explained above, *see supra* pp. 3–5, Congress enacted Section 14 to facilitate corporate democracy by ensuring that shareholders receive accurate and complete information about the matters to be presented at a company's annual meeting so they can instruct their proxies properly. These legislative aims reflect Congress's judgment that preventing misleading or incomplete proxy solicitations is essential to maintaining transparency and confidence in the American capital markets. Enjoining Chubb from excluding As You Sow's proposal would thus advance Congress's objectives. Irrespective of whether any given shareholder ultimately supports or opposes As You Sow's proposal, ensuring that shareholders are informed of the proposal and can express their views on a significant policy issue through a proxy vote serves the public interest in informed shareholder participation, transparent corporate governance, and faithful enforcement of the federal securities laws.

## CONCLUSION

For the foregoing reasons, As You Sow requests that this Court enter a preliminary injunction declaring that the exclusion of As You Sow's shareholder proposal from Chubb's 2026 proxy materials violates Section 14 of the Securities Exchange Act of 1934 and SEC Rule 14a-8 and enjoining Chubb to include the proposal in the proxy materials.

Respectfully submitted,

/s/ Nicolas A. Sansone
Nicolas A. Sansone (DC Bar No. 1686810)
Nandan Joshi (DC Bar No. 456750)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiff*

21