**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| AS YOU SOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:26-cv-00734 (SLS) |
| ) | |
| CHUBB LIMITED, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION AND
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

Nicolas A. Sansone (DC Bar No. 1686810)
Nandan Joshi (DC Bar No. 456750)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

_Counsel for Plaintiff_

March 23, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 3

I.      As You Sow is entitled to a preliminary injunction. ................................................. 3

        A.   Chubb's threshold arguments are meritless. ................................................. 3

             1. Chubb's challenge to service is not a basis for denying preliminary relief. ............. 3

             2. Laches is inapplicable here. ..................................................................... 5

             3. As You Sow has a cause of action to challenge exclusion of its shareholder
                proposal from Chubb's proxy materials. .................................................. 8

        B.   As You Sow is likely to succeed on the merits. ............................................. 9

             1. The proposal addresses a significant policy issue that transcends Chubb's
                day-to-day operations. ........................................................................... 11

             2. The proposal does not micromanage Chubb. ............................................. 16

        C.   The remaining preliminary injunction factors favor As You Sow. ................... 19

             1. As You Sow will suffer irreparable harm absent an injunction. .................... 19

             2. An injunction will not harm Chubb. ......................................................... 20

             3. The public interest favors an injunction. .................................................. 21

II.     If this Court grants an injunction, a nominal bond, if any, is sufficient. .................... 21

III.    The Court should deny Chubb's motion to dismiss. ............................................... 22

CONCLUSION ................................................................................................................ 25

**TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*AARP v. U.S. Equal Employment Opportunity Commission*,
  226 F. Supp. 3d 7 (D.D.C. 2016) ............................................................................... 7

*Apache Corp. v. New York City Employees' Retirement System*,
  621 F. Supp. 2d 444 (S.D. Tex. 2008) ..................................................................... 17

*Bailey v. Pregis Innovative Packaging, Inc.*,
  600 F.3d 748 (7th Cir. 2010) .................................................................................... 18

*Bond v. United States*,
  564 U.S. 211 (2011) ..................................................................................................... 9

*Christensen v. Harris Cnty.*,
  529 U.S. 576 (2000) ................................................................................................... 18

*District Hospital Partners, LP v. National Labor Relations Board*,
  141 F.4th 1279 (D.C. Cir. 2025) ............................................................................... 11

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.*,
  746 F.2d 816 (D.C. Cir. 1984) .................................................................................. 10

*Fuld v. Palestine Liberation Organization*,
  606 U.S. 1 (2025) ......................................................................................................... 5

*Fund for Animals v. Frizzell*,
  530 F.2d 982 (D.C. Cir. 1975) .............................................................................. 7, 20

*H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*,
  694 F.3d 827 (7th Cir. 2012) ................................................................................... 3, 4

*Huisha-Huisha v. Mayorkas*,
  27 F.4th 718 (D.C. Cir. 2022) ................................................................................... 10

*In re Allustiarte*,
  1990 WL 119087 (9th Cir. Aug. 14, 1990) ................................................................ 3

*In re Paraquat Products Liability Litigation*,
  2021 WL 4775284 (S.D. Ill. Oct. 13, 2021) .............................................................. 8

*Lovenheim v. Iroquois Brands, Ltd.*,
  618 F. Supp. 554 (D.D.C. 1985) ............................................................................... 19

*Maxwell v. Snow*,
  409 F.3d 354 (D.C. Cir. 2005) .................................................................................... 9

*Medical Committee for Human Rights v. Securities and Exchange Commission*,
    432 F.2d 659 (D.C. Cir. 1970) ................................................................................. 13

*Mylan Pharmaceuticals, Inc. v. Shalala*,
    81 F. Supp. 2d 30 (D.D.C. 2000) ......................................................................... 7, 20

*Natural Resources Defense Council, Inc. v. Morton*,
    337 F. Supp. 167 (D.D.C. 1971) ............................................................................. 22

*New York City Employees' Retirement System v. American Brands, Inc.*,
    634 F. Supp. 1382 (S.D.N.Y. 1986) ......................................................................... 19

*Newdow v. Bush*,
    355 F. Supp. 2d 265 (D.D.C. 2005) ........................................................................... 7

*North American Soccer League, LLC v. U.S. Soccer Federation, Inc.*,
    883 F.3d 32 (2d Cir. 2018) ......................................................................................... 9

*Novak v. World Bank*,
    703 F.2d 1305 (D.C. Cir. 1983) ............................................................................... 25

*Open Technology Fund v. Lake*,
    788 F. Supp. 3d 32 (D.D.C. 2025) ........................................................................... 22

*P.J.E.S. ex rel. Escobar Francisco v. Wolf*,
    502 F. Supp. 3d 492 (D.D.C. 2020) ......................................................................... 22

*Pro-Football, Inc. v. Harjo*,
    415 F.3d 44 (D.C. Cir. 2005) ..................................................................................... 5

*Roosevelt v. E.I. Du Pont de Nemours & Co.*,
    958 F.2d 416 (D.C. Cir. 1992) ......................................................................... 8, 9, 14

*Save Long Beach Island, Inc. v. U.S. Department of Commerce*,
    2025 WL 2996157 (D.D.C. Oct. 24, 2025) ............................................................... 7

*Securities and Exchange Commission v. Calvo*,
    378 F.3d 1211 (11th Cir. 2004) ............................................................................... 24

*Securities and Exchange Commission v. MCC International Corp.*,
    2022 WL 2760279 (S.D. Fla. May 18, 2022) ............................................................ 4

*Securities and Exchange Commission v. MCC International Corp.*,
    2023 WL 2891235 (S.D. Fla. Mar. 8, 2023) .............................................................. 4

*Securities and Exchange Commission v. MCC International Corp.*,
    2024 WL 1508281 (11th Cir. Apr. 8, 2024) .............................................................. 3

*Securities and Exchange Commission v. North American Research & Development Corp.*,
    424 F.2d 63 (2d Cir. 1970)....................................................................................... 24

*Starbucks Corp. v. McKinney*,
    602 U.S. 339 (2024) ............................................................................................... 10

*Sun Commodities, Inc. v. Island Fresh de Puerto Rico, Inc.*,
    2023 WL 7474486 (1st Cir. Aug. 14, 2023) ............................................................. 4

*Tosdal v. Northwestern Corp.*,
    440 F. Supp. 3d 1186 (D. Mont. 2020) ....................................................... 14, 15, 18

*Trinity Wall Street v. Wal-Mart Stores, Inc.*,
    792 F.3d 323 (3d Cir. 2015)............................................................................. 12, 15

*United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*,
    163 F.3d 341 (6th Cir. 1998) ................................................................................. 10

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988)............................................................................................... 24

*Whirlpool Corp. v. Shenzhen Sanlida Electrical Technology Co.*,
    80 F.4th 536 (5th Cir. 2023) ................................................................................ 3, 4

**Statutes**

15 U.S.C. § 78aa(a)....................................................................................................... 5

**Regulations**

17 C.F.R. § 240.14a-8(d) ............................................................................................... 8

17 C.F.R. § 240.14a-8(g) ....................................................................................... 10, 18

17 C.F.R. § 240.14a-8(i)(7) .................................................................................... 10, 16

17 C.F.R. § 240.14a-8(i)(10) ........................................................................................ 10

17 C.F.R. § 240.14a-8(j)(1) ...................................................................................... 7, 10

**Rules**

D.C. Superior Court Rule 4(c)(4) ................................................................................. 24

D.C. Superior Court Rule 4(h)(1)(B)............................................................................ 24

Federal Rule of Civil Procedure 4(e)(1) ....................................................................... 23

Federal Rule of Civil Procedure 4(f)(1)................................................................................... 24

Federal Rule of Civil Procedure 4(h)(1)(A)............................................................................ 23

Federal Rule of Civil Procedure 4(k)(1)(C)............................................................................. 5

Federal Rule of Civil Procedure 12(a)(1)(A)(i) ..................................................................... 25

Federal Rule of Civil Procedure 12(a)(4)(A) ......................................................................... 25

Federal Rule of Civil Procedure 65(a)(1) ................................................................................ 3

Federal Rule of Civil Procedure 65(c) ................................................................................... 22

**Other Authorities**

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or
   Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ................................................... 24

Securities and Exchange Commission, No-Action Letter, *Hartford Insurance Group, Inc.*,
   2025 WL 1381730 (Apr. 3, 2025) ............................................................................. 18

Securities and Exchange Commission, No-Action Letter, *Targa Resources Corp.*,
   2025 WL 1381725 (Mar. 27, 2025).......................................................................... 18

Securities and Exchange Commission, *Shareholder Proposals: Staff Legal Bulletin
   No. 14K (CF)* (Oct. 16, 2019)............................................................................. 18, 19

**INTRODUCTION**

Defendant Chubb Limited (Chubb) does not dispute that Plaintiff As You Sow properly submitted a shareholder proposal regarding a significant policy issue for inclusion in Chubb's 2026 proxy materials. Chubb also does not dispute that, absent a preliminary injunction from this Court, As You Sow will not be allowed to present its proposal to fellow shareholders in Chubb's proxy materials, and those shareholders will not be able to register their views on the proposal through their proxy votes. Moreover, Chubb identifies no concrete harm that it will suffer in the event that this Court enters a preliminary injunction before Chubb finalizes its proxy materials on April 3.

Chubb nonetheless argues that As You Sow is not entitled to preliminary relief. To start, Chubb's threshold arguments lack merit. Although Chubb disputes the adequacy of As You Sow's service of process, it disregards that completed service of process is not a prerequisite to entry of a preliminary injunction where, as here, the defendant has received notice of the motion. Chubb also invokes the doctrine of laches, but it cannot meet its burden of demonstrating lack of diligence or prejudice because As You Sow has moved expeditiously in pursuing its rights before Chubb finalizes its proxy materials. Finally, binding D.C. Circuit precedent forecloses Chubb's argument that As You Sow has no private right of action to challenge Chubb's exclusion of its proposal.

On the merits, Chubb does not dispute that shareholder proposals that present significant policy issues generally cannot be excluded under the regulatory exception for proposals relating to ordinary business operations, and it does not dispute that As You Sow's proposal presents such an issue. It argues, however, that the proposal seems to direct Chubb's ordinary business operations or otherwise micromanage Chubb. Chubb's argument misconstrues the proposal and the law. As You Sow's proposal does not seek to direct the decisions that Chubb makes as part of its day-to-day operations. Rather, it seeks to ensure that Chubb procures an analysis of the potential to use

subrogation to address the increasing damages associated with climate change—which Chubb does not dispute poses a grave risk to its existing business model. Chubb points out that As You Sow's proposal could influence the way that Chubb's management chooses to go about its day-to-day decisions. But Chubb does not respond to the point that if every shareholder proposal with the potential to *affect* a company's business operations could be excluded from a company's proxy materials, the materials would include only irrelevant proposals that have no bearing on the company. And Chubb ignores the fact that As You Sow's proposal does not require it to take any particular action based on the report that the proposal asks Chubb to commission.

The remaining preliminary injunction factors also support As You Sow. Chubb does not dispute that As You Sow's harm will be irreparable absent preliminary relief. Chubb does not point to any harm that it will experience from an injunction, as long as it can maintain its anticipated schedule for finalizing and disseminating its proxy materials. And Chubb pays scant heed to the public interest served by upholding the shareholder rights protected by the Securities Exchange Act. This Court should therefore grant a preliminary injunction. Further, in light of Chubb's failure to demonstrate that a timely injunction will cause it harm, the Court should require As You Sow to post no more than a nominal bond, if the Court requires As You Sow to post any bond at all.

This Court should also deny Chubb's motion to dismiss. Chubb's argument that As You Sow's complaint fails to state a plausible claim to relief reiterates Chubb's merits arguments in connection with the preliminary injunction motion and should be rejected for the same reasons. As for Chubb's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) for improper service, As You Sow properly served Chubb's domestic agent for service of process. In any event, in an excess of caution and to moot the disagreement, As You Sow has now also initiated service under the Hague Convention, just as Chubb wishes. This Court could thus also appropriately

2

choose to withhold judgment on the Rule 12(b)(5) motion until service under the Hague Convention is complete and then deny the motion as moot.

**ARGUMENT**

**I.      As You Sow is entitled to a preliminary injunction.**

       **A.  Chubb's threshold arguments are meritless.**

              **1.      Chubb's challenge to service is not a basis for denying preliminary relief.**

Chubb first argues that As You Sow's preliminary injunction motion should be denied because As You Sow has not effectuated proper service of process. ECF 14 (Opp.) at 15–20. Service of process, however, is not a prerequisite to granting preliminary relief. Accordingly, irrespective of how this Court resolves the dispute over service, *see infra* Part III, Chubb's argument offers no ground for the denial of As You Sow's motion.

Federal Rule of Civil Procedure 65(a)(1) authorizes a district court to issue a preliminary injunction "on notice to the adverse party." Thus, the Rule "does not require service of process" as a precondition to granting a preliminary injunction—just "notice." *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536, 542 (5th Cir. 2023) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978) (per curiam)); *see SEC v. MCC Int'l Corp.*, 2024 WL 1508281, at *2 (11th Cir. Apr. 8, 2024) (per curiam) (approving precedent that rejected the argument that "service of process [is] required to establish personal jurisdiction before [a] district court [may] issue [a] preliminary injunction"); *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) (based on "the plain language" of Rule 65(a), rejecting as "preposterous" the argument that a district court may not issue a temporary restraining order prior to service of process); *In re Allustiarte*, 1990 WL 119087, at *2 (9th Cir. Aug. 14, 1990) (table opinion) (affirming the entry of a preliminary injunction where "service of process was

3

unsuccessful" but the enjoined parties had "received adequate notice to file their timely opposition and appear at the hearing"); *see also Sun Commodities, Inc. v. Island Fresh de P.R., Inc.*, 2023 WL 7474486, at *1 (1st Cir. Aug. 14, 2023) (per curiam) (rejecting a due process challenge to a preliminary injunction entered prior to "formal service of process").

Here, Chubb incontestably received notice in compliance with Rule 65: As You Sow, through counsel, notified Chubb of this lawsuit before filing, and Chubb acknowledged receipt of that notice minutes after filing. *See* ECF 14-1 Exh. D. Likewise, As You Sow, through counsel, notified Chubb of its preliminary injunction motion contemporaneously with its filing and held a meet-and-confer with Chubb's counsel later that same day. *See* Sansone Decl. ¶¶ 11–12.

Further, this case exemplifies why Rule 65 allows preliminary injunctive relief after notice but before service of process. If Chubb, a Swiss company, is correct that service may be properly effectuated only pursuant to the procedures set out in the Hague Convention, *see* Opp. 16–18, formal service of process could take months. *See H-D Mich.*, 694 F.3d at 842. Requiring completed service under the Convention as a precondition to preliminary relief therefore "would have the unfortunate effect of immunizing" Chubb, and "most foreign defendants[,] from needed emergency injunctive relief." *Id.*; *see also SEC v. MCC Int'l Corp.*, 2022 WL 2760279, at *4 (S.D. Fla. May 18, 2022) (citing cases that have "considered, and rejected," the idea that a plaintiff must "obtain full blown service in accordance with … the Hague Convention" prior to a preliminary injunction), *report and recommendation adopted*, 2023 WL 2891235 (S.D. Fla. Mar. 8, 2023).

This is also not a case in which this Court will forever lack personal jurisdiction over Chubb, even if it resolves the dispute over service of process in Chubb's favor. Chubb correctly "does not dispute that once service is effectuated, personal jurisdiction will exist." *Whirlpool Corp.*, 80 F.4th at 543 (affirming an order granting a preliminary injunction in this circumstance).

Federal Rule of Civil Procedure 4(k)(1)(C) provides that "[s]erving a summons … establishes personal jurisdiction over a defendant" where service is "authorized by a federal statute." And 15 U.S.C. § 78aa(a), in turn, provides that process in cases that arise under the Securities Exchange Act of 1934 (as this case does) "may be served … wherever the defendant may be found." Chubb has not argued that applying 15 U.S.C. § 78aa(a) here would exceed "the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. courts." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 18 (2025). And any such argument would be meritless in any event, because As You Sow seeks to enforce U.S. laws that apply to the U.S.-registered securities that Chubb offers and sells to U.S. buyers on a U.S. stock exchange. There is thus "a close connection between [Chubb's] predicate conduct and the United States," and "the forum sovereign has a substantial interest in adjudicating the dispute." *Id.* at 24.

In these circumstances, where Chubb has received timely notice of the lawsuit and the preliminary injunction motion, and the inevitability of personal jurisdiction is not disputed, Chubb's challenge to service is not a defense to As You Sow's motion for preliminary relief.

### 2.    Laches is inapplicable here.

Chubb also argues that the doctrine of laches bars the entry of preliminary relief. Opp. 20–23. To establish this defense, Chubb bears the burden of proving a lack of diligence by As You Sow and consequent prejudice to Chubb. *See Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 47 (D.C. Cir. 2005) (per curiam). Chubb cannot establish either of the necessary elements.

On the first element, Chubb presents no evidence of a lack of diligence, instead resting solely on the amount of time that elapsed between Chubb informing Securities and Exchange Commission (SEC) staff that it intended to exclude As You Sow's proposal and As You Sow filing this lawsuit. During that period, however, As You Sow was diligent in pursuing its shareholder

rights. On January 15, 2026—the same day that SEC staff issued a letter stating that, based solely on Chubb's statement that it had a valid basis for excluding As You Sow's proposal, the SEC would not object to the exclusion—As You Sow contacted Chubb to discuss the possibility of a consensual resolution of the dispute that would avoid the need for litigation. Second Fugere Decl. ¶¶ 10, 12. Representatives from As You Sow and Chubb met on January 22, and Chubb indicated that it would give As You Sow's proposal further consideration. *Id.* ¶¶ 12–13.

Aware that Chubb could finalize its proxy materials as early as April 3, *id.* ¶ 11, As You Sow also began promptly to search for counsel capable of handling the case pro bono on a tight timeline, in the event that litigation was necessary. *Id.* ¶¶ 14–16. On February 3, As You Sow met with an attorney who agreed to help As You Sow locate suitable pro bono counsel. *Id.* ¶ 15. Just over two weeks later, As You Sow first met with present counsel, *id.* ¶ 16, and the representation agreement was finalized on February 23, Sansone Decl. ¶ 2. The complaint was filed early the following week, *see* ECF 1, and the preliminary injunction motion was filed early the week after that, *see* ECF 6. Thus, while Chubb exaggerates the timeline as reflecting a "three-month delay," Opp. 20 (formatting altered), As You Sow was diligent in pursuing its rights from January 15—the day on which it received the SEC's letter—to March 3—the day on which it filed this lawsuit.

Chubb claims that As You Sow "should have[] lined up counsel in advance" to litigate the "predictable" exclusion of its proposal, Opp. 21, but As You Sow had little reason to make such a prediction. As Chubb admits, it has "published and circulated all prior proposals from [As You Sow] except for one." *Id.* at 6. Chubb's argument, moreover, overlooks that its agreement to meet with As You Sow and consider a consensual resolution of the dispute gave As You Sow reason not to initiate litigation immediately. *See* Second Fugere Decl. ¶¶ 12–13. Meanwhile, although Chubb is correct that As You Sow has "knowledge and experience" as to shareholder proposals,

Opp. 21, this lawsuit is the first time that As You Sow has had to use litigation to pursue its right to have a proposal disseminated. *See* Second Fugere Decl. ¶ 7.

Chubb cites *Save Long Beach Island, Inc. v. U.S. Department of Commerce*, 2025 WL 2996157 (D.D.C. Oct. 24, 2025), but that case—and the cases that it cites—did not involve a laches defense. There, the plaintiffs sought to enjoin construction that had been approved eighteen months prior. *Id.* at *5. The court held that they had failed to show irreparable harm, noting that one factor supporting this finding was the plaintiffs' delay in filing suit. *Id.* at *3–5. Thus, *Save Long Beach Island* establishes only that delay can cut against an inference that a challenged action is injurious. The cases that *Save Long Beach Island* cites likewise do not address what constitutes insufficient diligence for purposes of laches. *See Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (per curiam); *AARP v. EEOC*, 226 F. Supp. 3d 7, 22 (D.D.C. 2016); *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005); *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 43–44 (D.D.C. 2000). In any event, as discussed above, the period that elapsed between the accrual of As You Sow's cause of action and the filing of this lawsuit was reasonable and not "unexplained." *Save Long Beach Island*, 2025 WL 2996157, at *5 (quoting *AARP*, 226 F. Supp. 3d at 22).

On the second element, Chubb has not shown prejudice. Although Chubb characterizes these proceedings as "unnecessarily rushed," Opp. 22, As You Sow could not have avoided moving for preliminary relief. By operation of SEC Rule 14a-8(j), Chubb's January 13, 2026, letter informing the SEC that Chubb intended to exclude As You Sow's proposal opened an eighty-day window, at the end of which—on April 3—Chubb can finalize its proxy materials. *See* 17 C.F.R. § 240.14a-8(j)(1). Even had As You Sow filed suit on January 14, the case would not have reached final judgment by April 3, especially given Chubb's position that service must first be effectuated

through the lengthy processes of the Hague Convention. Chubb thus would have found itself defending against a preliminary injunction motion irrespective of when the lawsuit was filed.[1]

Chubb's claims of economic prejudice fall flat for similar reasons. Chubb contends that the lawsuit has "diverted employee time and distracted management," Opp. 22, but it does not explain why a lawsuit filed a week or two earlier would not have had the same effect. Chubb also states vaguely that "[l]ast-minute modifications to proxy materials require significant employee attention," including "substantive[] review [of] the now-changed proxy materials." *Id.* Even if, as Chubb represents, review of the proxy materials is "nearly complete," ECF 14-2 (Froud Decl.) ¶ 16, Chubb does not explain why adding a 500-word proposal, *see* 17 C.F.R. § 240.14a-8(d), that it has already extensively analyzed, *see* ECF 1-2 (Chubb's SEC letter), will be disruptive. And although Chubb identifies financial burdens and other harms that "may" arise, Opp. 22, if Chubb is "delay[ed] in disseminating proxy materials," *id.* at 23, As You Sow has sought to prevent such a delay by identifying April 3 as the earliest date on which Chubb may finalize its proxy materials and seeking relief in time for Chubb to maintain that date. *See* ECF 6-1 (Pls. Memo.) at 19–20.

### 3. As You Sow has a cause of action to challenge exclusion of its shareholder proposal from Chubb's proxy materials.

Finally, Chubb contends that As You Sow lacks a private right of action to enforce its rights under Section 14(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-8. Opp. 25–26. The D.C. Circuit's precedential opinion in *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416 (D.C. Cir. 1992), correctly holds otherwise. There, the court held that, "in view of Congress's

---

[1] Chubb speculates that the timing of the lawsuit was "intended" to "collapse" the issue of service of process into the case's merits, Opp. 22, but its speculation is incorrect. *See generally* Second Fugere Decl.; Sansone Decl. Moreover, because service in Switzerland pursuant to the Hague Convention can take four months or longer, *see In re Paraquat Prods. Liability Litig.*, 2021 WL 4775284, at *3 (S.D. Ill. Oct. 13, 2021), service under the Convention likely could not have been completed within Rule 14a-8(j)'s eighty-day window under any circumstances.

intent that section 14(a) have real force, relevant judicial precedent, and the [SEC's] view of the private right, … shareholders may seek appropriate declaratory and injunctive relief when management refuses to distribute their proposals" as part of a proxy statement. *Id.* at 425.

Chubb argues that, since *Roosevelt*, the Supreme Court has changed its "framework" for evaluating whether a statute confers a private right of action, Opp. 26, and that *Roosevelt* is thus "no longer good law," *id.* at 25. *Roosevelt*, however, noted the doctrinal evolution to which Chubb alludes, observing that "[o]ver the years …, the [Supreme] Court has exercised greater restraint in the implication of private rights of action." 958 F.2d at 420. The D.C. Circuit nonetheless held that Section 14(a) creates such a right. Either way, "this Court is bound to follow circuit precedent until it is overruled." *Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005). *Roosevelt* controls here.[2]

**B. As You Sow is likely to succeed on the merits.**

As an initial matter, Chubb is wrong that As You Sow labors under a heightened burden to establish a right to relief because As You Sow "seeks an affirmative injunction that compels the defendant to act rather than demand[s] his restraint." Opp. 23. Although some courts have drawn a distinction between "prohibitory" injunctions that "maintain the status quo pending resolution of the case" and "mandatory injunctions" that "alter it," *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36–37 (2d Cir. 2018), the D.C. Circuit has not adopted that distinction. *See Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 834 n.31 (D.C. Cir.

---

[2] In a single sentence, Chubb also states that As You Sow "lacks standing to bring this suit." Opp. 25. But whether the Securities Exchange Act creates a private right of action through which As You Sow can redress its injury is a merits question that is distinct from the jurisdictional question whether As You Sow has suffered a cognizable injury that gives rise to Article III standing. *See Bond v. United States*, 564 U.S. 211, 218–19 (2011). As explained further below, *see infra* Part I.C.1, the exclusion of the shareholder proposal will cause concrete, particularized harm to As You Sow. Chubb accordingly (and sensibly) offers no real challenge to As You Sow's standing.

1984); *see also United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Regional Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (rejecting the distinction).

This case illustrates the futility of distinguishing between injunctions in that manner. The "status quo" in this context is defined as "the last uncontested status which preceded the pending controversy." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) (emphasis omitted; quoting *Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969)). Here, however, there is not and never has been an uncontested status quo regarding the contents of Chubb's 2026 proxy materials, which have yet to be finalized. *See* Froud Decl. ¶ 16. The parties have disputed from the outset whether Chubb must include As You Sow's properly submitted shareholder proposal in those materials, and the law requires Chubb to include the proposal unless Chubb carries the burden of establishing a basis for exclusion. *See* 17 C.F.R. § 240.14a-8(g). Chubb offers no reason why this Court should not simply ask—as with any preliminary injunction—whether As You Sow has made a "clear showing" that Chubb is unlikely to carry that burden. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024).

In any event, irrespective of how this Court defines the required showing, Chubb cannot establish that the exception that it invokes—SEC Rule 14a-8(i)(7), which allows a company to exclude a shareholder proposal from its proxy materials if it "deals with a matter relating to the company's ordinary business operations," 17 C.F.R. § 240.14a-8(i)(7)—provides a valid basis for excluding As You Sow's proposal.[3]

---

[3] In a footnote, Chubb contends that As You Sow's proposal is "independently excludable" under a separate regulatory exception, Rule 14a-8(i)(10), which permits the exclusion of a shareholder proposal "[i]f the company has already substantially implemented the proposal." 17 C.F.R. § 240.14a-8(i)(10), *cited at* Opp. 24 n.15. Because Chubb did not invoke Rule 14a-8(i)(10) before the SEC, Chubb cannot rely on it here. *See* 17 C.F.R. § 240.14a-8(j)(1) (requiring a company to "file its reasons" for excluding a proposal "with the [SEC] no later than 80 calendar days before it

10

### 1.    The proposal addresses a significant policy issue that transcends Chubb's day-to-day operations.

In its opening memorandum, As You Sow explained that Rule 14a-8(i)(7) does not permit the exclusion of proposals addressing "significant public policy issues that transcend a company's day-to-day management decisions," Pls. Memo. 2, and that the proposal here addresses such issues. Chubb does not appear to dispute that the proposal targets a significant policy issue. Instead, Chubb argues that the severe and mounting threat that climate-related losses pose to its overall business model—and the question of how to address that threat—does not transcend ordinary business matters. *See* Opp. 33–35. The basis for this argument seems to be that insights gleaned from the report that As You Sow proposes could influence the way that Chubb conducts its "day-to-day business operations as an insurance company." *Id.* at 35. As You Sow, however, has already explained why reading Rule 14a-8(i)(7) to "encompass[] all proposals that might *affect* a company's everyday operations" would be "nonsensical": embracing such a reading would mean that "[o]nly those proposals regarding significant policy issues that hold no relevance to the company could be brought, because only those proposals would pose no possibility of influencing a company's conduct in its operations." Pls. Memo. 16–17. Chubb offers no meaningful response.

Chubb first emphasizes two largely undisputed points. First, Chubb identifies the "subject matter" of As You Sow's proposal as Chubb's "decision-making process about subrogation and potential subrogation opportunities." Opp. 27. As You Sow agrees that its proposal addresses subrogation, albeit through a third-party report considering if and how subrogation could mitigate "climate-related losses" in particular. ECF 1-1 at 3. Second, Chubb states that the question whether

files its definitive proxy statement"). Further, Chubb's cursory footnote is inadequate to show that Rule 14a-8(i)(10) is a valid basis for exclusion here. *Cf. Dist. Hosp. Partners, LP v. NLRB*, 141 F.4th 1279, 1289 n.2 (D.C. Cir. 2025) (declining to "consider cursory arguments made only in a footnote" (quoting *Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 414 (D.C. Cir. 2024))).

to pursue subrogation in connection with an "individual claim[]" filed by one of its insureds forms part of its day-to-day operations. Opp. 28. As You Sow agrees with this contention as well.

Nonetheless, Chubb concedes—as it must—that Rule 14a-8(i)(7) does not permit the exclusion of As You Sow's proposal if the proposal "raise[s] a significant [social] policy issue that *transcends* the nuts and bolts of [the company's] business." *Id.* at 26 (alterations in original; quoting *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 341 (3d Cir. 2015)); *see also* ECF 1-2 at 5 (Chubb's representation to the SEC that "a proposal generally will not be excludable under Rule 14a-8(i)(7) where it raises a significant policy issue"). Chubb does not dispute that climate change, and the profound and growing impact that it is having on the insurance industry, is a significant policy issue. *See* Pls. Memo. 13–15 (citing recognition from reporters, politicians, and Chubb's leadership about the significance of the issue). And by informing Chubb's high-level approach to this acute threat to its overall business model, As You Sow's proposal transcends the operational "nuts and bolts," *Trinity Wall St.*, 792 F.3d at 341, of day-to-day coverage decisions.

Chubb's arguments to the contrary are meritless. Chubb first attacks a straw man, claiming that As You Sow takes the "categorical" position that "invoking a social policy issue is … enough" to require a proposal's inclusion in a company's proxy materials. Opp. 31. As You Sow agrees, though, that the issue must have "significance in relation to the company" as well as broader social significance. *Id.* (quoting SEC, *Shareholder Proposals: Staff Legal Bulletin No. 14M (CF)* (Feb. 12, 2025) (hereafter, SEC, *Legal Bulletin No. 14M*)).[4] Quoting the same SEC staff bulletin that Chubb does, As You Sow has acknowledged that a shareholder proposal invoking a significant policy issue must bear "a sufficient nexus to [the] particular company" to fall outside of the Rule 14a-8(i)(7) exception, Pls. Memo. 13 (quoting SEC, *Legal Bulletin No. 14M*), but that point

---

[4] https://www.sec.gov/about/shareholder-proposals-staff-legal-bulletin-no-14m-cf.

favors As You Sow, not Chubb. Indeed, Chubb does not dispute that, under the SEC's "company-specific approach in evaluating significance," Opp. 31 (quoting SEC, *Legal Bulletin No. 14M*), the impact of climate change is deeply significant for property and casualty insurers like itself.

Chubb also faults As You Sow for citing a 2021 SEC staff bulletin that is "now rescinded." *Id.* at 32. As You Sow, however, did not cite that bulletin for its present force. Rather, As You Sow cited the bulletin in support of its contention that SEC staff has "consistently adhered" to its understanding that the Rule 14a-8(i)(7) exception generally does not encompass proposals that address significant policy issues. Pls. Memo. 12; *see id.* at 13 (citing the 2021 guidance document as "reaffirm[ing]" this understanding, which SEC staff then "reiterated" in its now-operative bulletin). Chubb does not dispute the consistency of the SEC's interpretation or identify any relevant way in which the SEC's views on the scope of Rule 14a-8(i)(7) have changed over time.

Chubb also seeks to dismiss the agency guidance as "non-authoritative" (although conceding that it is entitled to "weight") and argues that As You Sow should have cited case law instead. Opp. 30. Chubb overlooks that the relative dearth of case law is a function of the fact that shareholders and companies have generally treated the SEC's opinions on shareholder proposals—which the SEC has only recently stopped issuing, *see* Pls. Memo. 6—as conclusive. *See* Second Fugere Decl. ¶ 6. In any event, *Roosevelt*, the D.C. Circuit precedent containing the most thorough discussion of what is now Rule 14a-8(i)(7), and which As You Sow cited repeatedly, *see* Pls. Memo. 4, 6, 14, 17, reinforces that "it is those matters that bear on a company's 'fundamental business strategy' or 'long-term goals' that the SEC has recognized as particularly appropriate subjects for shareholder proposals." Pls. Memo. 17 (quoting *Roosevelt*, 958 F.2d at 427).[5]

---

[5] Chubb faults As You Sow for citing *Medical Committee for Human Rights v. SEC*, 432 F.2d 659 (D.C. Cir. 1970), claiming that As You Sow "fail[ed] to note" that the opinion has been vacated.

Chubb does not dispute this reading of *Roosevelt* or contest that the subject matter of As You Sow's proposal bears on Chubb's fundamental business strategy or long-term goals. *See* Opp. 32–33. Rather, Chubb highlights that the D.C. Circuit agreed with the SEC that the shareholder proposal in *Roosevelt* could properly be excluded under Rule 14a-8(i)(7)'s exception for proposals directed at a company's "ordinary business operations." *Id.* at 33 (quoting *Roosevelt*, 958 F.2d at 425). The proposal in *Roosevelt*, though, looks nothing like As You Sow's. Although Chubb states that the proposal in *Roosevelt* "direct[ed] [a company] to phase out certain pollutants and report on its progress concerning the same," *id.*, this characterization is misleading. The company in *Roosevelt* had already agreed to phase out the pollutants at issue, and to do so "as soon as possible." 958 F.2d at 425 (citation omitted). Rather than addressing "whether to eliminate … production," then, the shareholder proposal addressed "the rapidity with which the near-term phase out should occur," seeking a target date one year sooner than the date proposed by the company. *Id.* Here, in contrast, As You Sow's proposal does not seek to direct the "implementation of a policy" to which Chubb is already committed, or the "steps … to accomplish" a "complex" operational goal. *Id.* at 428 (citation omitted). Instead, As You Sow's proposal asks the company to commission a report on a policy issue that is undisputedly of "extraordinary" concern. *Id.* at 427. Under *Roosevelt*, such proposals are not properly excluded. *Cf. id.* (suggesting that even "[t]iming questions" may be a proper subject for a proposal where, unlike in *Roosevelt*, "large differences are at stake").

Instead of grappling with *Roosevelt*'s analysis, Chubb turns to *Trinity Wall Street* and *Tosdal v. Northwestern Corp.*, 440 F. Supp. 3d 1186 (D. Mont. 2020). Neither supports Chubb. In *Trinity Wall Street*, the Third Circuit held that Wal-Mart could lawfully exclude a shareholder

---

Opp. 32 n.16. In fact, As You Sow noted that the Supreme Court vacated the *Medical Committee* opinion on mootness grounds. Pls. Memo. 4. *Roosevelt* nonetheless relied extensively on *Medical Committee*, which remains persuasive authority.

proposal that sought to govern "what products to put on its shelves." 792 F.3d at 348. Although the court recognized that the proposal addressed a significant policy issue—Wal-Mart's sale of dangerous or controversial products, including high-capacity firearms, *id.* at 345–46—it held that the issue did not transcend Wal-Mart's ordinary operations because it targeted nothing more than "the choosing of one among tens of thousands of products [Wal-Mart] sells." *Id.* at 351. Here, the proposal addresses an issue that poses an existential threat to the company's overall business model, *see* Pls. Memo. 7–8, 13–15, not the question whether to offer particular product lines.

In *Tosdal*, the District Court for the District of Montana considered whether a public utility company could lawfully exclude a shareholder proposal that asked it to phase out coal-generated electricity at a specific power plant in favor of renewable energy. 440 F. Supp. 3d at 1188–89. Although deeming the issue "close," *id.* at 1188, the court ultimately held that Rule 14a-8(i)(7) permitted the proposal's exclusion, *id.* at 1200. Importantly, though, because the company in *Tosdal* had already "committed to reduce the carbon intensity of its electric generation by 90 percent" over a particular timeframe, *id.* at 1189 (citation omitted), the court understood the parties' dispute to "turn[] not on *if* [the utility] should reduce the carbon intensity of its electric generation, but when and how [it] should accomplish its transition to carbon-free renewables." *Id.* at 1198 (citing *Roosevelt*). Because the "shutting down [of] a specific plant by a specified target date" failed to "transcend the [utility's] ordinary business operations," the court held that the proposal could be excluded. *Id.* at 1200. Here, by contrast, the proposal does not seek to direct the specifics of how Chubb should go about operationalizing its corporate policies.

Finally, Chubb distorts As You Sow's proposal in an effort to fit the proposal within the "ordinary business operations" exception. Emphasizing that case-specific subrogation decisions involve an analysis of "a broad range of economic information," Opp. 35, Chubb characterizes the

15

proposal as "seek[ing] to direct Chubb's subrogation strategy," *id.* at 34. The proposal, however, does no such thing. Rather, it aims to ensure that Chubb has considered *whether to have* a subrogation strategy in connection with climate-related losses. Although Chubb broadly contends that it "consider[s] the risks associated with climate," *id.* at 35, it does not purport to have conducted the requested analysis of whether or how subrogation would be a fruitful tool for addressing those risks. *See supra* p. 10 n.3 (explaining that, before the SEC, Chubb did not invoke the regulatory exception that permits it to exclude shareholder proposals that have already been substantially implemented). Moreover, Chubb's contention that the proposed report would "expose" Chubb's legal "strategy to the world" or risk waiving Chubb's attorney-client privilege, Opp. 34, is unfounded. The report—which, under the proposal, would "omit[]" all "proprietary information," ECF 1-1 at 3—would reveal a third party's assessment of whether and how subrogation could be used to offset climate-related losses. It would not reveal what, if anything, Chubb's management chooses to do with the report's findings and recommendations.

### 2.    The proposal does not micromanage Chubb.

Chubb also contends that the SEC has recognized an "independent" ground for excluding a shareholder proposal under Rule 14a-8(i)(7) where the proposal would "impermissibly micromanage complex operational decisions." Opp. 35. To say that a proposal micromanages a company, however, is just another way of saying that it targets the company's "ordinary business operations," 17 C.F.R. § 240.14a-8(i)(7), so Chubb's micromanagement arguments, Opp. 35–39, fail for the reasons discussed above: As You Sow's proposal targets a significant policy issue that transcends Chubb's day-to-day operations. In any event, As You Sow's proposal does not micromanage, so to the extent that micromanagement forms a distinct basis for exclusion, it does not apply here.

16

Chubb again emphasizes that evaluating the possibility of a subrogation claim in any particular case is a "complex" process that entails consideration of a variety of factors, *id.* at 36–37, but it elides the fact that As You Sow's proposal would leave such case-by-case decisions—as well as the determination of Chubb's overall subrogation strategy—entirely within the discretion of Chubb's management. Again, the proposal asks only that Chubb consider, through the requested report, whether and how the use of subrogation might help mitigate the grave economic risks that Chubb faces from climate change or otherwise inform its strategy.

Chubb's citation to SEC staff guidance stating that a proposal impermissibly micromanages a company when it "prescribe[s] specific actions that the company's management or the board must undertake without affording them sufficient flexibility or discretion in addressing the complex matter presented by the proposal" is therefore inapposite. *Id.* at 36 (quoting SEC, *Shareholder Proposals: Staff Legal Bulletin No. 14K (CF)* (Oct. 16, 2019) (hereafter, SEC, *Staff Legal Bulletin No. 14K*)).[6] As You Sow's proposal would not direct management to take *any* action apart from commissioning a third-party report—which Chubb does not contend is a "complex matter." Moreover, Chubb offers no response to the fact that "the proposal does not require that Chubb pursue subrogation under any given circumstances, and it does not seek to direct case-specific judgments about whether subrogation is appropriate." Pls. Memo. 18.

As You Sow's proposal thus stands in stark contrast to the proposals at issue in cases that Chubb cites. *See* Opp. 37. In *Apache Corp. v. New York City Employees' Retirement System*, 621 F. Supp. 2d 444 (S.D. Tex. 2008), the proposal asked a company to "implement" ten enumerated policies across its operations. *Id.* at 452. In *Tosdal*, the proposal asked the company to "remove all

---

[6]    https://www.sec.gov/rules-regulations/staff-guidance/staff-legal-bulletins/staff-legal-bulletin-14k-shareholder-proposals.

17

carbon emissions ... from a specific plant and to replace it with a specific type of electricity within five years." 440 F. Supp. 3d at 1200 (omission in original; citation omitted). Likewise, the proposal discussed in an SEC staff bulletin that Chubb describes, Opp. 38, asked company management to report annually on its "short-, medium- and long-term greenhouse gas targets," thus "requiring the adoption of time-bound targets … and changes in operations to meet those goals, thereby imposing a specific method for implementing a complex policy." SEC, *Staff Legal Bulletin No. 14K*. The proposal here, by contrast, asks Chubb only to commission a single report.

Chubb also cites several SEC no-action letters that, it says, suggest that SEC staff shares its understanding of Rule 14a-8(i)(7) micromanagement. Opp. 39. These nonbinding "opinion letters," however, are "'entitled to respect' … only to the extent that [they] have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). And the no-action letters contain "no *reasoning*"; they "just state[] a conclusion," leaving them without persuasive force. *Bailey v. Pregis Innovative Packaging, Inc.*, 600 F.3d 748, 751 (7th Cir. 2010). In any event, Chubb, which bears the burden of establishing that Rule 14a-8(i)(7) applies, *see* 17 C.F.R. § 240.14a-8(g), makes no effort to explain why the proposals addressed in the no-action letters bear any resemblance to As You Sow's. Indeed, several of the proposals—like the example in the SEC staff bulletin discussed above—sought reporting on the company's specific steps toward identified climate goals. *See, e.g.*, *Hartford Ins. Grp., Inc.*, 2025 WL 1381730 (Apr. 3, 2025); *Targa Resources Corp.*, 2025 WL 1381725 (Mar. 27, 2025). They are unlike As You Sow's proposal here for the same reason as the example in the SEC staff bulletin. The proposal in this case more closely resembles the proposal that SEC staff identified as an example of one that does not micromanage: one that requested a report on whether the company intended to reduce its carbon footprint but "deferred to management's discretion to consider if and

18

how" to pursue that goal. SEC, *Staff Legal Bulletin No. 14K*. Like that proposal, As You Sow's proposal "ask[s] the company to consider the relative benefits and drawbacks" of an action, *id.*—here, subrogation—and leaves it up to the company to decide what to do with that information.

### C.     The remaining preliminary injunction factors favor As You Sow.

#### 1.     As You Sow will suffer irreparable harm absent an injunction.

Chubb does not dispute that, absent preliminary relief, As You Sow will irretrievably lose its right to have its proposal considered at the 2026 shareholder meeting. *See* Pls. Memo. 19–20. Chubb acknowledges that courts have agreed that the loss of this right constitutes irreparable harm. Opp. 40; *see, e.g.*, *N.Y.C. Emps. Retirement Sys. v. Am. Brands, Inc.*, 634 F. Supp. 1382, 1388–89 (S.D.N.Y. 1986); *Lovenheim v. Iroquois Brands, Ltd.*, 618 F. Supp. 554, 561 (D.D.C. 1985). It argues, though, that As You Sow "suffers no cognizable harm from the proposal's exclusion" if it "has no lawful right to have its proposal included" in the first place. Opp. 40. This argument repackages Chubbs merits argument and fails for the same reasons.

Chubb also suggests that As You Sow can wait until next year and try to advance a substantively similar proposal then. *Id.* at 40–41. This argument overlooks that As You Sow and its fellow shareholders have a right to communicate their *present* views to Chubb and to one another by voting on all properly submitted shareholder proposals. *See* Second Fugere Decl. ¶¶ 8–9; *see also N.Y.C. Emps. Retirement Sys.*, 634 F. Supp. at 1388–89 (rejecting a similar argument). And it overlooks that this same situation, with the same time constraints, will recur year after year.

Finally, Chubb argues that As You Sow's supposed lack of diligence in filing suit militates against a finding of irreparable harm. Opp. 41–42. As explained above, *see supra* Part I.A.2, As You Sow acted diligently in putting this matter before this Court. Moreover, the cases that Chubb cites do not resemble this one. For example, in *Mylan Pharmaceuticals*, the plaintiff believed that

19

it had a right to sell a particular product starting on March 1 but waited more than eight months to seek a preliminary injunction. 81 F. Supp. 2d at 43–44. The court found that the delay undercut the contention that the inability to market the product was causing the plaintiff harm. *Id.* And in *Fund for Animals*, the plaintiffs challenged a regulation, in part on the basis that the comment period was too short to give them a reasonable opportunity to comment on the proposed rule. 530 F.2d at 984. The court principally found that the plaintiffs had "made no attempt to show that irreparable harm will result from the regulations." *Id*. at 987. The court added that its decision that a preliminary injunction was properly denied was "bolstered" by what the court considered the plaintiffs' "inexcusable" delay in filing suit until after the final rule was issued, when the district court could no longer easily grant practical relief as to the truncated comment period. *Id.* Here, though, As You Sow *has* shown irreparable harm and *did* bring suit as promptly as it could within a limited window of time, with a month remaining before the date on which a grant of relief might become less practical as a result of the finalization of Chubb's proxy materials.

###     2.     An injunction will not harm Chubb.

Contrary to Chubb's contention, Opp. 42, As You Sow acknowledged in its motion that this Court, in deciding whether to grant preliminary relief, should consider any "irreparable harm to Chubb" that such relief might cause. Pls. Memo. 19. Seeking to identify such harm, Chubb first makes the point that "printing and distributing proxy materials imposes a burden on companies." Opp. 42. But regardless of whether this Court grants a preliminary injunction, Chubb will print and disseminate proxy materials ahead of its annual meeting.

Chubb next claims that an injunction would cause it harm by creating "[i]nterference" with how Chubb's management assesses subrogation. *Id.* at 43. If the Court issues an injunction and if Chubb shareholders then approve the proposal, the report will impact Chubb's assessments only

if the report presents information that Chubb's management finds useful and on which it chooses to act. The report will not dictate, much less interfere with, Chubb management's assessments.

Finally, Chubb points to financial and other harms that might flow from "[u]nplanned delays in mailing the annual meeting materials" or a delay in holding the annual meeting. *Id.* As explained above, though, *see supra* p. 8, As You Sow has sought to avoid those possible harms by proceeding expeditiously in seeking relief prior to the finalization of Chubb's proxy materials.

### 3. The public interest favors an injunction.

Chubb does not dispute As You Sow's showing that Section 14 of the Securities Exchange Act of 1934 reflects Congress's desire to "facilitate corporate democracy by ensuring that shareholders receive accurate and complete information about the matters to be presented at a company's annual meeting so they can instruct their proxies properly." Pls. Memo. 21. Chubb instead maintains that this goal must be harmonized with the public interest in avoiding shareholder proposals that "interfere with ordinary business operations and micromanage corporate affairs." Opp. 44. Here again, Chubb repackages its merits argument. The policy balance that Chubb urges is already reflected in the system of carefully crafted exceptions that the SEC built into Rule 14a-8. Because As You Sow's proposal does not fall into any of these exceptions, the exclusion of the proposal from Chubb's proxy materials would not serve the policy goals that the exceptions were built to accomplish. Instead, exclusion would frustrate Section 14's goal of ensuring informed shareholder participation and transparent corporate governance.

## II. If this Court grants an injunction, a nominal bond, if any, is sufficient.

Invoking Federal Rule of Civil Procedure 65(c), Chubb asks that this Court impose a bond of $250,000 to $1.055 million on As You Sow if this Court grants preliminary relief. Opp. 44–45. Neither the facts nor the case law supports imposing a bond of this magnitude.

21

Rule 65(c) authorizes this Court to grant a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Interpreting this Rule, courts in this District have found that it "vests broad discretion in the district court to determine the appropriate amount of an injunction bond, including the discretion to require no bond at all." *Open Tech. Fund v. Lake*, 788 F. Supp. 3d 32, 39 (D.D.C. 2025) (quoting *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020)).

As explained above, *see supra* Part I.C.2, Chubb has not shown that it will suffer any meaningful harm from an injunction prior to finalization of its proxy materials. In contrast, the bond that Chubb requests would impose a prohibitive financial burden on As You Sow, a nonprofit organization with limited resources. Second Fugere Decl. ¶ 17; *see, e.g.*, *P.J.E.S.*, 502 F. Supp. 3d at 520 (considering a plaintiff's "[in]ability to post a bond" as a factor that favors waiving the requirement of an injunction bond). Once again, because of the timeline created by Rule 14a-8(j), a shareholder's challenge to the exclusion of a proposal from a company's proxy materials will almost always involve a request for preliminary or expedited relief. *See supra* pp. 7–8. If securing such relief requires the shareholder to post a potentially ruinous bond, few shareholders will be willing to assume the risks of litigation, leaving Section 14 underenforced and Congress's goals unrealized. *See Natural Resources Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 169 (D.D.C. 1971) (declining to set "more than a nominal amount as security" where doing so would "stifle the intent of the Act" that created the plaintiffs' cause of action).

## III.    The Court should deny Chubb's motion to dismiss.

Chubb asks this Court to dismiss the lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process and Federal Rule of Civil Procedure 12(b)(6) for failure

22

to state a plausible claim to relief. Opp. 1. Chubb's Rule 12(b)(6) arguments are indistinguishable from its arguments opposing the preliminary injunction. *See id.* at 21 (laches), 23–24 (merits). Those arguments should be rejected for the reasons given above. *See supra* Parts I.A.2, I.A.3, I.B.

This Court should also deny Chubb's Rule 12(b)(5) motion because As You Sow properly served Chubb by sending the summons and complaint by certified mail to Chubb Group Holdings Inc., the New York entity that Chubb identified in numerous SEC filings as its agent for service of process in lawsuits brought by shareholders to enforce their rights under federal securities laws. *See* Chubb Ltd., Form S-3 Registration Statement, at 1 (Oct. 3, 2024) (listing Chubb Group Holdings Inc. at 550 Madison Avenue in New York as Chubb's "agent for service");[7] *id.* at 45 (identifying Chubb Group Holdings Inc. as Chubb's "United States agent irrevocably appointed" to receive service of process in certain actions); *see also, e.g.*, Chubb Ltd., Prospectus Supplement at 45 (Aug. 4, 2025) (stating that "investors may serve Chubb with process in the United States with respect to actions against it arising out of or in connection with violations of U.S. Federal securities laws relating to offers and sales of the securities covered by this prospectus by serving Chubb Group Holdings Inc., its United States agent irrevocably appointed for that purpose").[8]

Under Federal Rule of Civil Procedure 4(h)(1)(A), a corporation may be served within the United States "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule 4(e)(1), in turn, permits service on an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Turning, then, to the rules of the D.C. Superior Court, a foreign corporation may be served within the United

---

[7] https://www.sec.gov/Archives/edgar/data/896159/000110465924105722/tm2424896-1_s3asr.htm.

[8] https://www.sec.gov/Archives/edgar/data/896159/000110465925074263/tm2521669-2_424b2.htm.

States by delivering the summons and complaint to "any … agent authorized by appointment … to receive service of process." D.C. Super. Ct. R. 4(h)(1)(B). And certified mail is an accepted delivery method under the Superior Court's rules. *See* D.C. Super Ct. R. 4(c)(4).

Although Chubb contends that service must be effectuated pursuant to the Hague Convention because it is a Swiss company, Opp. 16–18, the Convention by its terms governs the service *abroad* of judicial documents. *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361; *see also* Fed. R. Civ. P. 4(f)(1) (citing the Convention's protocols as a proper means of serving a defendant "at a place not within any judicial district of the United States"). Here, As You Sow effected *domestic* service by mailing the summons and complaint to Chubb's agent in New York City. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707–08 (1988) (holding that the Convention "does not apply" where "service on a domestic agent is valid and complete").

Chubb does not dispute that Chubb Group Holdings Inc. was properly served. Yet while conceding that Chubb Group Holdings Inc. is an authorized agent to receive service in some investor lawsuits arising under U.S. securities laws, Opp. 18–20, Chubb argues that Chubb Group Holdings Inc. is not an authorized agent to receive service in this lawsuit. In support of this argument, Chubb argues that its SEC filings designate Chubb Group Holdings Inc. as its agent for service only for claims "relating to the 'offers and sales' of securities covered by" those specific filings. *Id.* at 19. Nothing in the filings, however, purports to limit Chubb Group Holding Inc.'s authorization to *only* a particular subset of shareholder claims. Moreover, the federal securities laws embody Congress's "comprehensive plan to regulate the securities market." *SEC v. Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004) (per curiam) (quoting *SEC v. Rind*, 991 F.2d 1486, 1490 (9th Cir. 1993)); *see SEC v. N. Am. Research & Dev. Corp.*, 424 F.2d 63, 82 (2d Cir. 1970) ("[I]t

24

is particularly important to view the [securities] statutes not individually but as interdependent components of an integrated regulatory plan."). An authorization that allowed investors to effect domestic service on Chubb for only a subset of their rights under this integrated statutory scheme would create inefficiencies that frustrate congressional will.

Alternatively, this Court can deny Chubb's Rule 12(b)(5) motion without resolving the dispute over whether service on Chubb Group Holdings Inc. was appropriate. The D.C. Circuit has explained that "[a]lthough district courts have broad discretion to dismiss a complaint for failure to effect service, dismissal is not appropriate when there exists a reasonable prospect that service can be obtained." *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983). Here, Chubb concedes that it can be served pursuant to the Hague Convention, *see* Opp. 16–18, and service under the Convention is already underway, *see* Sansone Decl. ¶ 14. Because Chubb's filing of a motion to dismiss has automatically tolled the answer deadline that would otherwise be triggered by effective service, *see* Fed. R. Civ. P. 12(a)(1)(A)(i); Fed. R. Civ. P. 12(a)(4)(A), this Court can obviate the entire dispute over service of process by ruling on As You Sow's motion for a preliminary injunction, withholding judgment on Chubb's Rule 12(b)(5) motion until service under the Hague Convention is complete, and then denying Chubb's motion.

## CONCLUSION

For the foregoing reasons and those set forth in As You Sow's initial memorandum, the Court should grant the motion for a preliminary injunction and deny Chubb's motion to dismiss.

Respectfully submitted,

/s/ Nicolas A. Sansone
Nicolas A. Sansone (DC Bar No. 1686810)
Nandan Joshi (DC Bar No. 456750)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiff*