**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AS YOU SOW, <br><br> *Plaintiff*, <br><br> v. <br><br> CHUBB LIMITED, <br><br> *Defendant*. | Civil Action No. 26 - 734 (SLS) <br> Judge Sparkle L. Sooknanan |

**MEMORANDUM OPINION**

As You Sow is a nonprofit shareholder advocacy organization that engages companies on issues related to their long-term viability and value. In late 2025, As You Sow submitted a proposal to Chubb Ltd., an insurance company, for inclusion in Chubb's proxy materials for its May 2026 annual shareholder meeting. If approved, the proposal would direct Chubb to commission a third-party report on the feasibility of using subrogation—a doctrine permitting an insurer to step into the shoes of an insured—to seek remedies from responsible third parties in compensation for climate-change related losses. Chubb declined to include As You Sow's proposal in its proxy materials, finding that the proposal is properly excludable under the securities laws because it relates to Chubb's ordinary business operations. Almost two months later, As You Sow sued Chubb and moved for a preliminary injunction compelling Chubb to include its proposal. In response, Chubb cross-moved to dismiss under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). Based on the record before the Court, As You Sow has not demonstrated that it is entitled to emergency injunctive relief. And although As You Sow has now conceded that it failed to properly serve Chubb, the Court declines to dismiss the Complaint at this early stage and instead gives As You Sow 120 days to accomplish service.

**BACKGROUND**

A.    **Statutory & Regulatory Background**

1.    **Proxy Voting**

"Public company governance, at its highest level, occurs through annual and special shareholders meetings. At such meetings, shareholders vote on a variety of issues, including selecting directors, setting executive pay, and approving or rejecting major transactions, such as mergers and acquisitions." *Institutional S'holder Servs. v. SEC*, 718 F. Supp. 3d 7, 11 (D.D.C. 2024). Although shareholders may attend these meetings to vote in-person, modern corporate law also permits shareholders to vote "through someone who is appointed as a 'proxy.'" *Id.* As a typical corporation's shareholders became increasingly numerous and widely distributed, the proxy-voting system became "an indispensable part of corporate governance." *Amalgamated Clothing and Textiles Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877, 881 (S.D.N.Y. 1993); *see also Interfaith Ctr. on Corp. Resp. v. SEC*, 786 F. Supp. 3d 97, 105 (D.D.C. 2025).[1]

One critical component of the proxy-voting system is that "[p]ublic companies publish and circulate a [so-called] proxy statement in advance of their annual shareholders' meeting." *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 328 (3d Cir. 2015). "The statement is an informational package that tells shareholders 'about items or initiatives on which [they] are asked to vote[.]'" *Id.* (alteration in original) (quoting *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 727 (S.D. Tex. 2010)). Along with the proxy statement, companies send the proxy itself (either a "proxy card" or an electronic or telephonic equivalent), which is how the shareholder authorizes the recipient to vote and specifies how to vote. 2 Thomas Lee Hazen, Treatise on the Law of

---

[1] In the context of corporate law, "proxy" has multiple meanings: the person appointed to vote another's shares, the "grant of authority" authorizing the person to do so, and the document granting that authority. *Proxy*, Black's Law Dictionary (12th ed. 2024).

Securities Regulation § 10:8 (Nov. 2025 Update). Together, these are referred to as "proxy materials." *KBR Inc. v. Chevedden*, 776 F. Supp. 2d 415, 419 (S.D. Tex. 2011).

### 2.    SEC Regulation

In 1934, Congress sought to "curb growing abuses of the proxy statement process" through Section 14 of the Securities Exchange Act. *Interfaith Ctr.*, 786 F. Supp. 3d at 106. Among other proscriptions, Congress forbade solicitation of proxies in violation of rules promulgated by the Securities and Exchange Commission (SEC). 15 U.S.C. § 78n(a)(1). "The SEC's 'proxy rules are concerned with assuring full disclosure to investors of matters likely to be considered at shareholder meetings.'" *Trinity Wall St.*, 792 F.3d at 335 (quoting 3 Thomas Lee Hazen, Treatise on the Law of Securities Regulation § 10.2 (6th ed. 2009)). The rule at issue in this case is Rule 14a–8 (17 C.F.R. § 240.14a–8), which "generally requires companies to place on management's proxy ballot[] any proper proposal submitted by a qualifying shareholder." *Tosdal v. Nw. Corp.*, 440 F. Supp. 3d 1186, 1192 (D. Mont. 2020) (internal quotation marks omitted). "The idea was to provide shareholders a way to bring before their fellow stockholders matters of shareholder concern that are proper subjects for stockholders' action under the laws of the state under which the Company was organized . . . and to have proxies with respect to such proposals solicited at little or no expense to the security holder." *Trinity Wall St.*, 792 F.3d at 335 (cleaned up).

If a shareholder has complied with all of Rule 14a–8's procedural requirements, there are "thirteen substantive reasons" why a company may nevertheless exclude her proposal from the proxy materials. *Heritage Found. v. Airbnb, Inc.*, No. 25-cv-676, 2026 WL 395797, at *4 (D. Del. Feb. 12, 2026). Relevant here, the company may exclude the proposal if it "deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a–8(i)(7). "This

exemption is premised on the notion that 'management cannot exercise its specialized talents effectively if corporate investors assert the power to dictate the minutiae of daily business decisions.'" *Grimes v. Centerior Energy Corp.*, 909 F.2d 529, 531 (D.C. Cir. 1990) (quoting *Med. Comm. for Human Rts. v. SEC*, 432 F.2d 659, 679 (D.C. Cir. 1970), *vacated as moot*, 404 U.S. 403 (1972)).

If a company wants to exclude a shareholder proposal from its proxy materials, it must first notify the shareholder in writing. *Trinity Wall St.*, 792 F.3d at 336 (citing 17 C.F.R. § 240.14a–8(f)(1)). The company must then file its reasons for excluding the proposal with the SEC's Division of Corporation Finance staff, which has traditionally commented favorably or unfavorably on the exclusion. *Id.* at 336–37 (citing 17 C.F.R. § 240.14a–8(j)(1)). "A shareholder dissatisfied with the staff's response can . . . pursue its rights against the company in federal court." *Id.* at 337.[2]

## B.    Factual Background

"The following facts are alleged in the Complaint or drawn from declarations in the record that are not disputed in relevant part, except where otherwise noted." *Postal Police Officers Ass'n v. USPS*, 502 F. Supp. 3d 411, 415 (D.D.C. 2020).

---

[2] In November 2025, the SEC announced that for the 2025–2026 proxy season, "resource and timing considerations" prevent it from reviewing and substantively responding to Rule 14a–8 submissions. Statement Regarding the Division of Corporation Finance's Role in the Exchange Act Rule 14a-8 Process for the Current Proxy Season, Sec. & Exch. Comm'n (Nov. 17, 2025), https://www.sec.gov/newsroom/speeches-statements/statement-regarding-division-corporation-finances-role-exchange-act-rule-14a-8-process-current-proxy-season   [perma.cc/W3GH-4DP4]. For exclusions other than those under Rule 14a–8(i)(1), the SEC stated that it would respond with a letter stating that it would not object "based solely on the company's or counsel's representation" that the company "has a reasonable basis to exclude the proposal based on the provisions of Rule 14a–8." *Id.*

As You Sow is a California-based nonprofit organization that "represents shareholders in engagements with companies on a range of issues, with the goal of reducing corporate risk, benefiting brand reputation, and increasing company value." Decl. Danielle Fugere ¶ 2, ECF No. 6-2. It files shareholder proposals under Rule 14a–8 "on behalf of itself and other shareholders . . . to draw the attention of management, corporate boards, and shareholders to issues that present material risks to corporate performance and long-term shareholder value." *Id.*

Chubb Ltd. is one of the companies in which As You Sow owns shares. *Id.* ¶ 3. Chubb is a publicly traded Swiss insurance company. Compl. ¶ 10, ECF No. 1; *see* Decl. Samantha Froud ¶ 5, ECF No. 14-2. Since December 2020, the Chubb shares owned by As You Sow have continuously exceeded $2,000 in market value. Fugere Decl. ¶ 3.

In November 2025, As You Sow submitted a shareholder proposal to Chubb. *Id.* ¶ 4. The operative language of the proposal stated:

> Shareholders request that Chubb issue a third-party report assessing if and how pursuing subrogation claims for climate-related losses would benefit the Company and its insureds, omitting proprietary information, and at reasonable expense.

Compl. Ex. 1, ECF No. 1-1. "'Subrogation' . . . is defined as '[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.'" *Phila. Indem. Ins. Co. v. Lend Lease (U.S.) Constr., Inc.*, 282 F. Supp. 3d 368, 375 n.6 (D.D.C. 2017) (alterations in original) (quoting *John L. Mattingly Constr. Co. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1069 (Md. 2010)). And "[i]n the insurance context, [a]n insurer asserting a subrogation right is usually viewed as 'standing in the shoes' of the insured." *Id.* (quoting *John L. Mattingly Constr.*, 999 A.2d at 1069).

In response, Chubb sent a letter to the SEC in which it explained that it believed that the proposal was excludable under Rule 14–8(i)(7) because it "relates to the Company's ordinary business operations and . . . impermissibly seeks to micromanage the company. Compl. Ex. 2 at 2,

ECF No. 1-2. Two days later, the SEC issued a letter stating that it "will not object if the Company excludes the Proposal from its proxy materials." Compl. Ex. 4, ECF No. 1-4.

The deadline for Chubb to finalize and distribute its proxy materials is rapidly approaching. Chubb represented to this Court that it plans to finalize the materials by April 2, 2026, and to mail them by April 7, 2026. Joint Status Report (Mar. 16, 2026), ECF No. 8.

### C.      Procedural Background

As You Sow sued Chubb on March 3, 2026. Compl. Its Complaint asserts that Chubb's refusal to include its proposal in the company's proxy materials violates Section 14 of the Securities Exchange Act of 1934 and Rule 14a–8. Compl. ¶¶ 26–29. Eight days later, As You Sow filed a motion for a preliminary injunction. Mot. Prelim. Inj., ECF No. 6. As You Sow requests that the Court issue an injunction requiring Chubb to include its proposal in the proxy materials that the company will disseminate in advance of its May 2026 annual shareholder meeting. *Id.* at 1. Chubb has cross-moved to dismiss As You Sow's Complaint under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). Opp'n & Cross-Mot., ECF No. 14. The Court held a hearing on the motions on March 30, 2026. Both motions are fully briefed and ripe for review. *See* Reply & Cross-Opp'n, ECF No. 16; Cross-Reply, ECF No. 19.

### LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the movant must show (1) that "he is likely to succeed on the merits"; (2) that "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) that "an injunction is in the public interest." *Id.* at 20.

6

"Rule 12(b)(5) governs motions to dismiss for insufficient service of process." *Jones-Richardson v. Univ. of Phx.*, 334 F.R.D. 349, 352 (D.D.C. 2020). A plaintiff must serve process in the manner prescribed by Federal Rule of Civil Procedure 4. *See, e.g.*, *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 78 (D.C. Cir. 2014). Under that rule, "[a] summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed[.]" Fed. R. Civ. P. 4(c)(1). When a defendant objects to improper service of process, the plaintiff "bears the burden of proving that he properly served" the defendant "and must file proof[] of service on the docket." *Padgett v. Vilsack*, No. 24-cv-2954, 2024 WL 5283897, at *2 (D.D.C. Nov. 8, 2024).

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### DISCUSSION

The Court first addresses Chubb's cross-motion to dismiss for improper service of process. The Court then turns to As You Sow's motion for a preliminary injunction. Finally, the Court addresses Chubb's request to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Although the Court declines to issue a preliminary injunction, it also declines to end the case at this early stage.

### A.      Rule 12(b)(5)

The Court begins with Chubb's objection that As You Sow has failed to properly accomplish service under Federal Rule of Civil Procedure 4. "Unless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant." *Jones-Richardson*, 334 F.R.D. at 352 (alteration adopted) (quoting *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007)). Here, As You Sow attempted to serve process by mailing a summons and a copy of the Complaint to Chubb Group Holdings Inc.— "a U.S.-based subsidiary holding company owned by Chubb Limited." Froud Decl. ¶¶ 9, 10; *see* ECF No. 5.

Although As You Sow's briefs contended that it had properly served Chubb, it conceded at the motion hearing that its service was defective. Mot. Hr'g Tr. at 13:3–7, ECF No. 22. Given that concession, As You Sow has manifestly not met its burden to demonstrate that it sufficiently served Chubb. *See Padgett*, 2024 WL 5283897, at *2. Still, that does not mean that dismissal of its Complaint is warranted. "Although district courts have broad discretion to dismiss a complaint for failure to effect service, dismissal is not appropriate when there exists a reasonable prospect that service can be obtained." *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983). And here, Chubb acknowledges that As You Sow can, at minimum, effectuate service under the Hague Convention. *See* Opp'n & Cross-Mot. 16–17. Indeed, As You Sow confirmed at the motion hearing that the process of serving Chubb pursuant to the Hague Convention is already underway. Mot. Hr'g Tr. at 6:22–7:1. Accordingly, the Court will deny without prejudice Chubb's request to dismiss the Complaint and order As You Sow to serve Chubb within 120 days. *See* Fed. R. Civ. P. 4(m); *see also Angelich v. MedTrust, LLC*, 910 F. Supp. 2d 128, 132 (D.D.C. 2012) ("[T]he

8

court can, in its sound discretion, direct that service be effected within a specified time, quashing the defective service without dismissing the case." (cleaned up)).

### B.    Preliminary Injunction

The Court next turns to As You Sow's request for a preliminary injunction. Here, the Court need go no further than addressing As You Sow's likelihood of success on the merits. "[A] failure to show a likelihood of success on the merits alone is sufficient to defeat a preliminary-injunction motion." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (citing *Ark. Dairy Coop. Ass'n v. USDA*, 573 F.3d 815, 832 (D.C. Cir. 2009)). And at this stage, As You Sow has not met its burden of demonstrating that likelihood.[3]

Recall that Chubb refused to include As You Sow's proposal because of Rule 14a–8(i)(7), which permits a company to exclude a shareholder proposal that "deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a–8(i)(7). The operative language of the proposal stated:

> Shareholders request that Chubb issue a third-party report assessing if and how pursuing subrogation claims for climate-related losses would benefit the Company and its insureds, omitting proprietary information, and at reasonable expense.

Compl. Ex. 1 Determining whether Chubb lawfully refused to include that proposal depends on whether the proposal deals with a matter related to Chubb's "ordinary business operations." "Unfortunately, th[at] phrase has no precise definition." *Grimes*, 909 F.2d at 531; *see Apache Corp. v. N.Y.C. Emps.' Ret. Sys.*, 621 F. Supp. 2d 444, 459 (S.D. Tex. 2008) ("The term 'ordinary

---

[3] The Parties' motions raise a long list of issues, many of which are not fully developed or premature given the posture of this case. Because As You Sow is not entitled to a preliminary injunction, the Court need not address the other issues raised by the Parties, including: (1) whether this Court could issue a preliminary injunction despite As You Sow's defective service; (2) whether As You Sow has a private right of action; (3) whether Rule 14a–8(i)(7) imposes a micro-management principle separate from a day-to-day-business-matters principle; and (4) whether As You Sow's proposal is separately excludable under Rule 14a–8(i)(10). *See* Opp'n & Cross-Mot. 24 n.15, 25, 35; Reply & Cross-Opp'n 3, 8, 16; Cross-Reply 5.

business operations' escapes formal definition."). Indeed, "[t]he ordinary business exclusion has been called the 'most perplexing' of all the 14a–8 bars." *Trinity Wall St.*, 792 F.3d at 337 (quoting Daniel E. Lazaroff, *Promoting Corporate Democracy and Social Responsibility: The Need to Reform the Federal Proxy Rules on Shareholder Proposals*, 50 Rutgers L. Rev. 33, 94 (1997)).

To evaluate As You Sow's likelihood of success on the merits, the Court first discusses how Rule 14a–8(i)(7) should be interpreted, and then it explains why As You Sow has not shown that its proposal falls outside that exclusion.

### 1.     Interpreting Rule 14–8(i)(7)

There are few cases addressing Rule 14a–8(i)(7), and "[t]o glea[n] its scope," courts often "look to SEC guidance and state law." *See Apache Corp.*, 621 F. Supp. 2d at 449. The SEC adopted the current version of the ordinary-business exclusion in 1976, and it has since issued two additional releases commenting on the exclusion's meaning. *See* Adoption of Amendments Relating to Proposals by Security Holders (1976 Release), Exchange Act Release No. 12,999, Investment Company Act Release No. 9,539, 41 Fed. Reg. 52994 (Dec. 3, 1976); Amendments to Rule 14a–8 Under the Securities Exchange Act of 1934 Relating to Proposals by Security Holders (1983 Release), Exchange Act Release No. 20,091, 48 Fed. Reg. 38218 (Aug. 16, 1983); Amendments to Rules on Shareholder Proposals (1998 Release), Exchange Act Release No. 40,018, Investment Company Act Release No. 23,200, 63 Fed. Reg. 29106 (May 28, 1998).[4]

---

[4] Prior to 1998, the ordinary-business exclusion was located at 17 C.F.R. § 240.14a–8(c)(7) and stated that a proposal is excludable if it "deals with a matter relating to the conduct of the ordinary business operations of the registrant." *See Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 418 n.2 (D.C. Cir. 1992). In 1998, the SEC made what it described as "minor conforming changes to the language of" the ordinary-business exclusion. 1998 Release, Exchange Act Release No. 40,018, Investment Company Act Release No. 23,200, 63 Fed. Reg. 29106, 29107 (May 28, 1998). Neither As You Sow nor Chubb has addressed what impact, if any, this change should have on this Court's interpretation of the ordinary-business exclusion or on the propriety of the Court's deference to the SEC's interpretive releases.

In its 1976 Release, the SEC stated that Rule 14a–8(i)(7) permits exclusion of "proposals involv[ing] business matters that are mundane in nature and [that] do not involve any substantial policy or other considerations," which the agency contrasted with "matters which have significant policy, economic or other implications inherent in them." 41 Fed. Reg. at 52998. Over twenty years later, the SEC issued another release professing the agency's commitment to "continue to apply" the standard "originally articulated in the Commission's 1976 release." 1998 Release, 63 Fed. Reg. at 29108. In reality, the 1998 Release considerably fleshed out the terse explanation provided by the 1976 Release.

The 1998 Release identified "two central considerations" underlying the "policy" of the ordinary-business exclusion. *Id.* First, there are "[c]ertain tasks [that] are so fundamental to management's ability to run a company on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder oversight." *Id.* Still, "proposals relating to such matters but focusing on sufficiently significant social policy issues . . . generally would not be considered to be excludable[] because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote." *Id.* Second, some proposals seek "to 'micro-manage' the company by probing too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment." *Id.*

Although these releases provide helpful guidance in some respects, they also raise questions that have yet to be developed by the Parties. For one, should the Court defer to the releases' interpretations of Rule 14a–8(i)(7)? As You Sow says yes, asserting at the motions hearing that the releases are entitled to so-called *Auer* deference, Mot. Hr'g Tr. at 17:21–24, and treating them in its briefs as providing the rule of decision to resolve its emergency motion, *see,*

11

*e.g.*, Mot. 12. Although Chubb stated at the motion hearing that it does not believe that the releases are entitled to *Auer* deference, it did not object in its briefing to As You Sow's reliance on them. *See* Mot. Hr'g Tr. at 39:19–21; Opp'n & Cross-Mot. 31–32. But besides a throw-away citation to *Kisor v. Wilkie*, 588 U.S. 558 (2019), in As You Sow's motion, neither Party has explained why the releases should or should not be entitled to *Auer* deference. *See Kisor*, 588 U.S. at 573–79; *Tosdal*, 440 F. Supp. 3d at 1195.

The D.C. Circuit's cases addressing Rule 14a–8(i)(7)—and as far as the Court is aware, there are only two—do not address that question expressly. *See Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 426, 428 (D.C. Cir. 1992); *Grimes*, 909 F.2d at 531–32. Those decisions predate both the SEC's 1998 Release and the Supreme Court's clarification in *Kisor* of the limits on deference to agencies' regulatory interpretations. Accordingly, although the Circuit approvingly noted the SEC's "understanding," *Roosevelt*, 958 F.2d at 426, of Rule 14a–8(i)(7) as "explained" by the 1976 Release, *Grimes*, 909 F.2d at 531, the Circuit has not concluded that all of the releases should be afforded determinative interpretive weight, as the Parties appear to assume is the case.[5]

In perhaps the leading case on Rule 14a–8(i)(7) (though again, the pickings are slim), the Third Circuit concluded that the releases merit "deference" because they were "adopted after notice and comment." *Trinity Wall St.*, 792 F.3d at 337 n.9. Distilling a neat "two-part analysis" from the SEC's releases, that circuit explained:

> Under the first step, we discern the "subject matter" of the proposal. . . . Under the second, we ask whether that subject matter relates to [the company]'s ordinary business operations. . . . If the answer to the second question is yes, [the company]

---

[5] The D.C. Circuit has one case concerning the predecessor to Rule 14a–8(i)(7). *Med. Comm. for Human Rts. v. SEC*, 432 F.2d 659, 676 (D.C. Cir. 1970), *vacated as moot*, 404 U.S. 403 (1972). Because it predates all of the releases at issue, it provides little insight into whether those releases are entitled to *Auer* deference.

must still convince us that [the shareholder]'s proposal does not raise a significant policy issue that transcends the nuts and bolts of the [company]'s business.

*Trinity Wall St.*, 792 F.3d at 341 (quoting 1983 Release, 48 Fed. Reg. at 38221). But that circuit did not go through the steps that *Kisor* later explained are necessary before treating an agency interpretation as authoritative. *See* 588 U.S. at 573–79.

Even if this Court were to conclude that it should defer to the releases' interpretations of Rule 14a–8(i)(7), another question is how to harmonize them. Consider an issue important for this case: if a shareholder proposal implicates both a significant policy issue and a business's day-to-day operations, how should a court (or a company) determine whether it is excludable under Rule 14a–8(i)(7)? The Court perceives some tension between the 1976 and 1998 Releases about that. According to the 1976 Release, the inquiry is whether the proposal has a "significant policy, economic or other implication[] inherent in [it]." 41 Fed. Reg. at 52998. Put differently, it appears to direct the company to ask whether the proposal "involve[s] *any* substantial policy or other considerations." *Id.* (emphasis added). But according to the 1998 Release, such a proposal falls outside the exclusion if it "*focus*[*es*] on sufficiently significant social policy issues" such that the proposal "transcend[s] the day-to-day business matters." 63 Fed. Reg. at 29108 (emphasis added). This latter articulation appears to require the significant policy issue to be central to the proposal in a way that is not contemplated by the 1976 Release.

Finally, the Parties also rely on legal bulletins issued by SEC staff that express views about how to interpret Rule 14a–8(i)(7) and the releases themselves. *See, e.g.*, Mot. 13; Opp'n & Cross-Mot. 30. Citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), Chubb suggests that these bulletins "provide evidence" of the rule's meaning. Opp'n & Cross-Mot. 30. The bulletins, however, "represent interpretations and policies followed by the Division of Corporation Finance," not the SEC. Staff Legal Bulletins, Sec. & Exch. Comm'n (Feb. 12, 2025),

13

https://www.sec.gov/rules-regulations/staff-guidance/staff-legal-bulletins    [perma.cc/NS7Q-ZUZ2]. More recent cases on Rule 14a–8(i)(7) have afforded the bulletins "careful consideration." *Trinity Wall St.*, 792 F.3d at 343 n.11 (quoting *Donaghue v. Accenture Ltd.*, No. 03-cv-8329, 2004 WL 1823448, at *3 (S.D.N.Y. Aug. 16, 2004)); *Tosdal*, 440 F. Supp. 3d at 1194–95. But the Parties have yet to explore why the Court should find these bulletins to be persuasive expositions of Rule 14a–8(i)(7)'s meaning.

The Court concurs that Rule 14a–8(i)(7) is "perplexing." *Trinity Wall St.*, 792 F.3d at 337 (quoting Lazaroff, *Promoting Corporate Democracy and Social Responsibility*, 50 Rutgers L. Rev. at 94). At this early stage in the case, proceeding on a short timeline and relying on the Parties' expedited briefing, it is easier for the Court to raise interpretive questions than to answer them. For purposes of As You Sow's motion, however, both Parties rely on the SEC's interpretations of Rule 14a–8(i)(7). Thus, in resolving that motion, the Court will follow their lead and evaluate As You Sow's proposal by reference to those agency interpretations.

### 2.    As You Sow's Proposal

As You Sow's core argument is that its proposal "addresses" a significant policy issue transcending the day-to-day of Chubb's business: "the severe and mounting threat that climate-related losses pose to its overall business model." Reply & Cross-Opp'n 11. But according to the 1998 Release—to which As You Sow says the Court should give *Auer* deference, Mot. Hr'g Tr. at 17:21–24—the inquiry is not whether a proposal *addresses* a significant policy issue. Instead, it is whether the proposal "*focus*[es] on" such an issue. 63 Fed. Reg. at 29108. And for now, even under As You Sow's preferred interpretive approach, As You Sow has not shown that its proposal focuses on climate change rather than on subrogation.

14

As You Sow's proposal seeks to put to a shareholder vote whether Chubb should "issue a third-party report assessing if and how pursuing subrogation claims for climate-related losses would benefit the Company and its insureds." Compl. Ex. 1. On its face, the proposal "deals with" Chubb's subrogation strategy. 17 C.F.R. § 240.14a–8(i)(7). It is true that it also implicates climate change, which is undoubtedly a significant policy issue. *See Tosdal*, 440 F. Supp. 3d at 1198 ("Climate change presents an intolerable and urgent global crisis."). But implicating such an issue is not the same thing as focusing on it in a way that causes the proposal to "transcend the day-to-day" matters of Chubb's business. 1998 Release, 63 Fed. Reg. at 29108. As one of Chubb's declarants explains, "Chubb pursues subrogation claims as part of its day-to-day business where it makes legal and business sense to do so," and it determines "whether to pursue a subrogation claim on a case-by-case basis *after* a particular loss has occurred." Decl. Joseph Mannion ¶ 6, ECF No. 14-4. As You Sow has yet to persuasively explain why a report assessing climate-related subrogation claims transcends Chubb's routine subrogation-claim practices.

To make the case that its proposal transcends Chubb's ordinary business practices, As You Sow argues that "climate change, and the profound and growing impact that it is having on the insurance industry, is a significant policy issue." Reply & Cross-Opp'n 12. In As You Sow's view, "by informing Chubb's high-level approach to this acute threat to its overall business model, [its] proposal transcends the operational 'nuts and bolts[]' . . . of day-to-day coverage decisions." *Id.* (quoting *Trinity Wall St.*, 792 F.3d at 341).

What this argument misses is the role that subrogation plays in the proposal. As acute a threat as climate change might be to Chubb's business model, As You Sow does not articulate why that threat—and not Chubb's subrogation practices—is the "focus[]" of its proposal. 1998 Release, 63 Fed. Reg. at 29108. The closest As You Sow gets is noting that its proposal contemplates a

report on "whether and how the use of subrogation might help mitigate the grave economic risks that Chubb faces from climate change." Reply & Cross-Opp'n 17. Yet merely noting the proposal's connection to climate change is not the same as demonstrating that it escapes being enmired in Chubb's day-to-day subrogation decisionmaking.

Instead, the through-line in As You Sow's briefing is that "the impact of climate change is deeply significant for property and casualty insurers." Reply & Cross-Opp'n 13; *see* Mot. 15. But as even As You Sow acknowledges, under the SEC's 1998 interpretation of Rule 14a–8(i)(7), a proposal's connection to climate change is not itself enough to make that issue "transcend[ant]." 63 Fed. Reg. at 29108; *see* Reply & Cross-Opp'n 12 (calling that position a "straw man"). That result holds true regardless of whether the company at issue is in the insurance industry or a different industry affected by climate change. *Cf. Roosevelt*, 958 F.2d at 428–29 (proposal requiring report on environmentally safe substitutes to chemical products excludable under Rule 14a–8(i)(7)); *Tosdal*, 440 F. Supp. 3d at 1199–1200 (same for proposal that a power company replace a coal-fired power plant with renewable energy production).

Finally, As You Sow occasionally intimates that its position is buoyed by the fact that the proposal would only compel commissioning a report rather than another action. *See, e.g.*, Mot. 18 ("While insights gleaned from the report could influence Chubb's strategic direction, decisions about whether and how to incorporate those insights would remain in Chubb's hands."); Reply & Cross-Opp'n 11 ("As You Sow agrees that its proposal addresses subrogation, albeit through a third-party report considering if and how subrogation could mitigate 'climate-related losses' in particular." (quoting Compl. Ex. 1)). The Court sees some logic in that suggestion. When a shareholder proposal contemplates only a report, it might be less likely that the proposal "deals with a matter relating to the company's ordinary business operations." 17 C.F.R.

§ 240.14a–8(i)(7). Or to use the language of the 1998 Release, such a proposal might have a different "focus[]" than a proposal not framed in terms of a report. 63 Fed. Reg. at 29108. The problem for As You Sow is that this approach is flatly rejected by the 1983 Release, which says that "this interpretation raises form over substance" and instead directs SEC staff to consider "the subject matter of the special report." 48 Fed. Reg. at 38221; *see also Roosevelt*, 958 F.2d at 428–29 (noting the SEC staff's "practice" regarding proposals for reports); *Trinity Wall St.*, 792 F.3d at 343 (relying on the SEC staff's "consistent focus on the underlying subject matter of a proposal"). And according to As You Sow, this release is one to which the Court should afford *Auer* deference. Mot. Hr'g Tr. at 17:21–24.

*     *     *

After further briefing, As You Sow may well convince the Court that it is correct on the merits. But to obtain a preliminary injunction, As You Sow is required to make "a clear showing that [it] is entitled to such relief." *Winter*, 555 U.S. at 22. As the issues in this case have thus far been presented to the Court, it has not met that burden. That is fatal to its request. *Standing Rock Sioux Tribe*, 205 F. Supp. 3d at 26.

### C.    Rule 12(b)(6)

But just because As You Sow has not met its burden to obtain a preliminary injunction does not mean that, as Chubb contends, dismissal under Rule 12(b)(6) is warranted at this early stage. As described above, the caselaw regarding Rule 14a–8(i)(7) is sparse, and the Parties have yet to reckon with significant and potentially outcome-determinative interpretive questions. And given the expedited timeline for briefing and decision, the Court is not well-positioned to definitively conclude that As You Sow's Complaint fails to state a claim. The Court concludes that the better course is to deny Chubb's cross-motion to dismiss without prejudice. A briefing schedule

that allows the Parties to air out these difficult issues "might cast portions of this case in a new light." *See Meta Platforms, Inc. v. FTC*, 723 F. Supp. 3d 64, 71 (D.D.C. 2024) (denying motion for preliminary injunction and denying cross-motion to dismiss). After As You Sow properly effectuates service, Chubb may renew its motion to dismiss on any basis in Rule 12.[6]

## CONCLUSION

For the foregoing reasons, the Court denies As You Sow's Motion for a Preliminary Injunction, ECF No. 6, and denies without prejudice Chubb's Motion to Dismiss, ECF No. 14.

A separate order will issue.

 

SPARKLE L. SOOKNANAN
United States District Judge

Date:   March 31, 2026

---

[6] Only one of Chubb's arguments in favor of dismissal does not track its arguments opposing As You Sow's motion for a preliminary injunction: Chubb contends that the Complaint should be dismissed under the doctrine of laches. *See* Cross-Reply 3. "Laches is the principle that equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant." *Kemp v. Eiland*, 139 F. Supp. 3d 329, 349 (D.D.C. 2015) (quoting *Expedia, Inc. v. District of Columbia*, 120 A.3d 623, 639 (D.C. 2015)). A defendant asserting a laches defense must show "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Major v. Plumbers Local Union No. 5*, 370 F. Supp. 2d 118, 127–28 (D.D.C. 2005) (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)). "Laches is a fact-intensive defense poorly suited to a motion to dismiss." *Kemp*, 139 F. Supp. 3d at 349–50. At the motion hearing, Chubb conceded that if this Court declined to award preliminary injunctive relief, the prejudice it claims to suffer from As You Sow's alleged delay "would go away." Mot. Hr'g Tr. at 45:8. Still, since the Court denies Chubb's motion without prejudice, it declines to resolve whether its laches defense is meritorious.